HOWARD PORTER v. STATE.

No. A-8879.    Sept. 13, 1935.
(49 Pac. [2d] 234.)

W. N. Redwine and E. P. Hill, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, hereinafter referred to as the defendant, was by information jointly charged with John Williams and Clyde Holford with the crime of murder, and upon a plea of guilty was sentenced to death by electrocution.

The facts as disclosed by the record show that on the 30th day of October, 1933, the defendants were each brought before A. C. Sewell, justice of the peace, and advised of the nature of the charge against them and their rights as defendants charged with a felony; they were represented by counsel, and entered pleas of not guilty, and waived a preliminary trial. The county attorney asked for the privilege to examine the state's witnesses, and the case was set down for hearing on the 2d day of November, 1933. That on the 2d day of November, 1933, the defendants, and each of them, were present in court and evidence was taken on behalf of the state, and the defendants,

and each of them, were held to answer the charge of murder, without bail.

Information was filed in the district court, and a severance was granted. Demurrer of the defendant was filed to the information, overruled, and defendant duly excepted. On the 15th day of September, 1934, the defendant was arraigned in the district court and pleaded not guilty.

It is further shown by the record that on the 3d day of October, 1934, the defendant withdrew his plea of not guilty heretofore entered, and entered a plea of guilty to the crime of murder; time for sentence was fixed at 1:30 p. m., the day the plea of guilty was entered. The record further shows that at 1:30 p. m., on the 3d day of October, 1934, the same being the day the defendant withdrew his plea of not guilty and entered his plea of guilty, the court sentenced the defendant to death in the electric chair December 21, 1934.

It is further shown that at the time the court sentenced the defendant pleas were made by counsel representing the defendant and the county attorney as to what punishment the court should impose upon the defendant.

The record further shows that on October 8, 1934, the defendant filed a motion to set aside the judgment and sentence and grant a new trial, and on the 10th day of November, 1934, an amended motion to set aside the judgment and sentence of defendant was filed. In the amended motion filed by the defendant he alleges that he was sentenced on the 3d day of October, 1934, by the judge of the district court, and the date of his electrocution fixed for the 21st day of December, 1934, and states he pleaded guilty of homicide under statements made him by the county attorney who misled said defendant. The statements being as follows:

"That prior to the time he plead guilty to said charge the defendant, his attorney L. J. Burt and county attorney of Pittsburg county, had a conversation in regard to said matter and said county attorney stated to said defendant that the district judge who would impose sentence had never sent a man to the electric chair who plead guilty before him, and further stated that the district judge was opposed to capital punishment.

"That after the conversation stated took place in the county attorney's office, and after the defendant, county attorney and defendant's attorney returned to the court room, the county attorney inquired of the defendant what he had made up his mind to do, and stated to the defendant, that if he wished to plead guilty that the matter would be submitted to the court without recommendation or statement on his part, and the court could pass upon it as he wished.

"The defendant further states that he relied upon all the statements and representations made by the county attorney, and would not have plead guilty to said charge if it had not been for the statements of the county attorney which lead the defendant to believe he would only receive a life sentence if he entered a plea of guilty; that when he entered his plea of guilty the county attorney asked the court to consider the evidence of two witnesses, Manuel Trammell and Lige Hoffman, the undertaker, taken in the previous case, which testimony was introduced in the case of Clyde Holford who was a joint defendant with the defendant in the information so filed in said court, which was contrary to the understanding of the defendant, and in violation of section 2772, Comp. St. 1921, which section reads as follows:

" 'Testimony—how presented. The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county out of court, at a specified time and place, upon such notice to the adverse party as the court may direct.'

"The defendant further alleges the statements of the county attorney mislead him and caused him to plead guilty to said charge, when in truth and in fact the defendant would not have plead guilty if he had not been mislead by the statements of the county attorney.

"In support of the defendant's allegations in the motion to set aside the judgment and grant him a new trial, the affidavit of L. J. Burt, who was representing the defendant was filed, in which affidavit Mr. Burt states that the defendant Howard Porter asked for a conference with the county attorney concerning his case, and the county attorney granted the conference and when they got into the county attorney's office the county attorney said to the defendant: 'You have asked me to talk with you. What you say will not be used against you. You are charged with the crime of murder and you are to go to trial before a jury. One of the men charged jointly with you has been tried and found guilty, and the jury fixed his punishment at death in the electric chair. If you have anything to say I am ready to listen.'

"The affidavit further states that the defendant was reluctant to say anything, but did say he was with the boys at the time of the killing and that he was guilty, but did not feel he should be sentenced to death. The county attorney then stated: 'I think you are as guilty as Holford. He has been tried and found guilty and given the chair by the jury, and the jury will give you the same punishment. I will not recommend to the court that you be given a life sentence, but will contend for the death sentence upon a plea of guilty, but I will say to you that Judge Melton has been on the bench for sixteen years and has never yet sentenced a man to the chair where the punishment was left to the court; that he (Judge Melton) is opposed to capital punishment.'

"The defendant asked the county attorney to recommend a life sentence if he entered a plea of guilty. The county attorney refused to do so. The conference then ended and we went back to the court room and the defendant then asked me to withdraw his plea of not guilty

and enter a plea of guilty, which I did and at the same time addressed the court in behalf of the defendant, asking the court to fix the punishment at life imprisonment in the penitentiary. I felt that should have been done upon the defendant's plea of guilty."

L. J. Burt was then examined by W. N. Redwine, who appeared as counsel for the defendant in the hearing of the motion for a new trial. The examination shows that Mr. Burt was an attorney practicing law at Sapulpa, Okla., and that he had represented Howard Porter, and that on the day Howard Porter entered his plea of guilty the witness had had a conversation with the county attorney, the testimony being in substance the same as the testimony heretofore set out as being a part of the affidavit of L. J. Burt.

The witness further stated:

"I believe the county attorney offered to introduce the testimony of the witnesses that had been taken in the Holford case. He asked the court to consider that testimony."

The witness further testified that after the plea of guilty was entered by the defendant the court stated he would take the question of the penalty to be imposed under advisement until the afternoon. "I knew that under the circumstances the court might give him the death penalty." The court has power to do that. The defendant did not make any request to withdraw his plea of guilty. Probably two hours intervened between the plea of guilty and the sentence. The court asked the witness if he was present when the court dismissed the jury, and the witness answered he was; that he heard the remarks of the court to the jury at the time the jury was dismissed.

"Question by the Court: You heard me commend the jury for assessing the death penalty? A. Yes. Well, not

that particular part of it. The Court: In three cases. There have been three death penalties assessed prior to that time. A. Two prior to that time. Two prior to the Porter case. I don't remember but two. Mr. Watson, the county attorney: Willie Edwards, Clyde Holford and Goldie McCollum."

The court continues the examination:

"Well, you heard me at any rate commend the jury for the courageous stand they had taken in assessing the death penalty. You heard my remarks to the jury. A. I heard your statement, yes. Q. Then you knew I was apparently not opposed to capital punishment from that expression, didn't you? A. I know what your statement was, but I do not know whether or not you would personally assess the punishment or leave it to the jury."

On cross-examination, by the county attorney, the witness stated:

"I heard your statement to the defendant that if he plead guilty he plead guilty at his own risk, that the judge might give him the electric chair. Question by the county attorney: Aren't you mistaken about the statement you say I made that the judge was opposed to capital punishment? Didn't I say that I understood that the court had never given a death penalty on a plea of guilty? Isn't that all I said? A. I did not so understand that, Mr. Watson."

The county attorney in his statement stated:

"I told the defendants if Holford would plead guilty and take a life sentence, and the other two take 25 years each, that I thought I would be willing for them to plead guilty on that basis, yes, sir, but that was before the evidence was brought before the jury, when I thought I had to rely on shifting convict testimony."

The defendant, testifying in his own behalf, stated:

"My name is Howard Porter; I am twenty-three years of age; I plead guilty to murder in the court here some time ago; prior to pleading guilty I had a conversation

with the county attorney in his office, together with Mr. Burt; the county attorney said Mr. Melton had been on the bench 16 years and he had never given anyone the electric chair that had plead guilty before him; the county attorney never did say he would recommend a life sentence or a death sentence; did not say he would recommend either; he said Judge Melton was opposed to capital punishment, that he had been on the bench 16 years, and had never given anyone the chair that plead guilty before him. We then went back in to the court room and I plead guilty."

On cross-examination the defendant was asked if he was in the courtroom during the trial of Clyde Holford, and answered, "Yes." "I related all the conversation of Mr. Watson that I recall took place while we were in the office." Witness further stated that he did not recall stating that John Williams and Clyde Holford and the defendant had planned to hijack the deceased of the canteen books, and further stated he did not take part in the stabbing of the deceased. "I told the county attorney I left when the fight started between Williams and De-Lano; I told him I knew why John Williams went down there, but it wasn't to rob any one. You told me Judge Melton had been on the bench 16 years and had never given anyone the electric chair that had plead guilty before him; I do not recollect you saying you would do either way if I plead guilty; I know you said that the judge was opposed to capital punishment." The foregoing is in substance the testimony taken at the hearing upon the motion to set aside and vacate the judgment, and to grant the defendant a new trial.

The motion to set aside the judgment and sentence was overruled, and defendant excepted and appealed to this court.

The defendant has assigned four errors alleged to have been committed. The first being the court erred in overruling plaintiff in error's demurrer to the information. Second, error of the court in assessing the death penalty. Third, the judgment of the court in giving the plaintiff in error the death penalty was not warranted under the facts and circumstances in the case. Fourth, error of the court in overruling plaintiff in error's amended motion to set aside the judgment and sentence of the defendant, and granting a new trial.

The information has been carefully read and studied and we hold that it states facts sufficiently clear to charge the crime of murder against the defendant, and the other parties named in the information, and that the court did not err in overruling the demurrer to the information.

The fourth assignment covers the other assignments of the defendant alleged as grounds for reversal, that is, that the court erred in overruling plaintiff in error's amended motion to set aside the judgment and sentence of the defendant and grant a new trial.

Every person charged with crime, whether guilty or innocent, is entitled to a fair and impartial trial, that is, a trial in accordance with the rules of law and principles of justice, and it is a duty resting on the courts to see that this guarantee conferred by the Constitution upon every person is upheld and sustained. Goben v. State, 20 Okla. Cr. 220, 201 Pac. 812.

In cases of this kind, where the defendant is charged with a capital offense, he should have the advantage of every right which the law secures to him upon his trial. It has been the universal holding of this court that in capital cases a plea of guilty can only be entered after the defendant has been fully advised by the court of his rights,

and the consequences of his plea, and where it appears on appeal from a judgment of conviction based upon a plea of guilty that the defendant has been denied a right guaranteed by the Constitution, such showing requires a reversal unless the record clearly shows the right was waived, or that no injury could have resulted by reason of such denial. Howington v. State, 30 Okla. Cr. 243, 235 Pac. 931; Mullen v. State, 28 Okla. Cr. 218, 230 Pac. 285.

In the instant case it appears that upon the defendant entering his plea there was no attempt whatever to inform the defendant of his constitutional and statutory rights.

The record discloses that the defendant had prior to the 3d day of October, 1934, entered his plea of not guilty, and on the 3d day of October, 1934, the defendant appeared in open court, with his counsel, and withdrew his plea of not guilty and entered his plea of guilty to murder, and the court set the time for sentence at 1:30 in the afternoon of October 3, 1934. No advice or directions were given by the court to the defendant prior to the withdrawing of the plea of not guilty and entering his plea of guilty.

The record further discloses that when the plea of not guilty was withdrawn, and the plea of guilty entered, that the defendant's attorney made a plea to the court for clemency; that the court fixed 1:30 p .m., the day the plea was entered, to impose sentence upon the defendant. At the appointed hour, the record shows the court made quite an extensive statement as to what had been going on in the penitentiary between the convicts, and after stating that the defendant did not plead guilty until his codefendant had been convicted and sentenced to the electric chair, among other statements the court made the following statement that defendant would not have pleaded guilty

had he not have been convinced that the jury would also give him the death penalty. The court further stated, after a full consideration of this case, "I feel it is my duty to administer the death penalty in each of these cases," referring to this defendant, and to the case of John Williams, a codefendant.

The court then requested the defendant Howard Porter to stand, and stated:

"Howard, you have pleaded guilty to the crime of murder in this case, and the court sentences you to be executed in the electric chair on the 21st day of December, 1934."

No advice or instruction was given the defendant as to his right of appeal, or as to the consequences of his plea of guilty prior to imposing sentence upon him. Mullen v. State, 28 Okla. Cr. 218, 230 Pac. 285.

In a criminal action the defendant has the right to plead guilty and the effect of such a plea is to authorize a judgment of conviction and imposition of punishment as provided by law. A plea should be freely and voluntarily made by one competent to know the consequences, and should not be induced by fear, persuasion, promises, or ignorance. In some states a plea of guilty on a charge of murder is not received; in others, on a plea of guilty the case must stand continued for judgment and sentence; in still others, a jury must be impaneled in capital cases to impose the sentence.

In this state a plea of guilty of murder may be accepted, but before it is accepted the defendant should be fully instructed and informed as to all his constitutional rights. Mullen v. State, supra.

The record in this case shows that prior to the trial of Clyde Holford, a codefendant, in a conversation had with the county attorney, a statement was made by the county attorney that if Clyde Holford would plead guilty and take a life sentence, that he would consent for the defendant entering a plea of guilty and taking 25 years. Clyde Holford, the codefendant, did not plead guilty, but was tried by a jury, convicted, and received a sentence of death by electrocution. After the Holford trial had closed, negotiations were then opened with the county attorney as to a plea of guilty and a life sentence. The county attorney would not agree to make any recommendation as to what the penalty should be. In the negotiations with the defendant the county attorney made a statement that the trial judge had been on the bench for sixteen years and had not during that time sentenced a prisoner to the electric chair, where he had entered a plea of guilty.

It is further contended by the defendant that the county attorney stated that the trial court was opposed to capital punishment. That statement of the defendant is controverted by the county attorney, and no statement was made to the defendant as to any recommendation the county attorney would make.

The court in imposing the death penalty on the defendant, according to the statement in the record, considered the general understanding as to what had been going on in the penitentiary, and considered the testimony that he had heard during the trial of Clyde Holford. It is perfectly clear that in imposing the death penalty he did not act solely on the plea of the defendant, but considered facts outside of the record in this case, and some facts that had been developed in the trial of other cases

of prisoners, where they had been charged with murder, in taking the life of another prisoner.

The contention of counsel that their motion to set aside the plea of guilty and vacate sentence is predicated upon section 2961, O. S. 1931, which reads:

"The court may at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted."

Section 3126, O. S. 1931, provides:

"The time appointed [for pronouncing judgment] must be at least two days after the verdict, if the court intend to remain in session so long; or, if not, at as remote a time as can reasonably be allowed."

This court has repeatedly held that in a felony case, and especially in a capital case, if the defendant pleads guilty without benefit of counsel, or was influenced to enter such plea by his counsel or by the prosecutor, or by acts of the court, he should be accorded the right of trial by jury, or be permitted any time before judgment to withdraw his plea of guilty and substitute his plea of not guilty. Tipton v. State, 30 Okla. Cr. 56, 235 Pac. 259, Mullen v. State, and Howington v. State, supra.

The uniform holding of this court, in construing section 2961, O. S. 1931, has been that the granting or denying of the permission to withdraw a plea of guilty before or after judgment and to substitute a plea of not guilty is a matter within the sound discretion of the trial court. Polk v. State, 26 Okla. Cr. 283, 224 Pac. 194; Mullen v. State, supra.

The county attorney did not make any recommendation or any statements to the defendant to induce him to enter his plea of guilty, but the defendant was influenced

to enter his plea of guilty from the statements made in consultation with the county attorney, and his counsel, that the trial court had been on the bench sixteen years and had never sentenced any man to the electric chair who had pleaded guilty.

In our opinion the defendant should have been permitted under all the facts and circumstances to withdraw his plea of guilty when he applied for leave to do so. There is nothing to show that the motion was not made in good faith, or that the entering of the plea and motion to withdraw it was intended for delay. A defendant should not be allowed to trifle with the court by deliberately entering a plea of guilty and capriciously withdrawing it on the date set for pronouncing judgment, but where there is reason to believe that the plea has been entered from inadvertence, and without due deliberation, and mainly from the hope that the punishment may be thereby mitigated, the court should be indulgent in permitting the plea to be withdrawn.

For the reasons stated, the judgment of the trial court is reversed with directions to set aside the judgment and permit the defendant to withdraw his plea of guilty and enter his plea of not guilty, and grant him a trial as provided by law. The warden of the penitentiary will surrender the defendant, Howard Porter, into custody of the sheriff of Pittsburg county, who will keep him in custody pending further proceedings in the case.

DOYLE, J., concurs. EDWARDS, J., not participating.