F. M. BENNETT et al. v. STATE.

No. A-10010.    July 29, 1942.

(128 P. 2d 253.)

Wallace Wilkinson and Robert J. Bell, both of Mc-Alester, for plaintiff in error F. M. Bennett.

W. A. Lackey, of McAlester, for plaintiff in error I. H. Blumenthal.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for the State.

JONES, J. The defendants, F. M. Bennett and I. H. Blumenthal, were jointly charged with the crime of embezzlement by information filed in the district court of Pittsburg county on September 20, 1940. At their arraignment the defendants entered a plea of guilty. Various postponements of the pronouncing of sentence were had, and on January 3, 1941, each of the defendants filed his separate application for permission to withdraw his plea

of guilty and enter a plea of not guilty. Hearing was had on said applications on January 9, 1941, and the trial court, after a consideration of the evidence introduced by the defendants and by the county attorney, denied each of the applications to withdraw the pleas of guilty and sentenced each of said defendants to serve a term of two years in the State Penitentiary, and an appeal has been taken to this court.

Separate briefs have been filed for the defendants. The facts and circumstances surrounding the pleas of guilty which were entered by the defendants are not the same and the case of each individual will be discussed separately insofar as these facts are different.

The agreed facts are as follows:

In the year 1939 defendant Blumenthal was president and owner of the Midwest Supply & Equipment Company. This company had a contract with the State Board of Public Affairs to use prison labor and machinery in the manufacture of pants, shirts, and other work clothing for clothing firms in various parts of the country. Under this contract the clothing companies would furnish the defendant with the material and he would use the prison labor and machinery to manufacture the finished article, which he, in turn, sold to the distributor. The State of Oklahoma was to be paid a certain percentage for the use of its equipment and prison labor. A surety bond in the sum of $10,000 was executed by this defendant to guarantee the performance of his part of the agreement. On June 21, 1940, Blumenthal, being in financial difficulties, closed his business. An audit of his books was made which disclosed that he was in debt to the State of Oklahoma in the sum of several thousand dollars under this contract.

Negotiations were had which resulted in a settlement of this shortage by the payment of the surety company of the sum of $7,000.

At the same time the defendant Blumenthal was manufacturing work clothing at the penitentiary, the State of Oklahoma was manufacturing prison goods of their own.

The defendant Bennett was the warehouse foreman who had charge of keeping records of the clothing materials which went into the manufacture of the prison-made goods owned by the state.

Shortly after the settlement had been made by the surety company for the shortage on account of the failure of the defendant Blumenthal to pay the state the money which was due to them for the use of its machinery and prison labor, it was discovered that several bales of chambray belonging to the state had been used by the defendant Blumenthal in the manufacture of clothing which he had sold to clothing firms. An investigation was made which resulted in the filing of charges against these defendants in the justice of the peace court at McAlester on September 18, 1940. They were specifically charged in the information with the embezzlement of four bales of sanforized chambray clothing material of the value of $819.51. With the facts up to this point there is no dispute on the part of any of the parties hereto.

It is the contention of the defendant Blumenthal that after he had made his settlement with the Board of Affairs in the summer of 1940, he went to New York. That he received a letter from the warden of the State Penitentiary while in New York in August, 1940, asking him to return to Oklahoma in connection with an investigation which was being made. That Blumenthal employed W. A. Lackey, attorney at McAlester, to talk to the

warden and find out just what the investigation concerned and to advise him as to whether it was necssary for him to return to the State of Oklahoma.

That on September 17, 1940, he was arrested by two plain-clothes men in Oklahoma City, taken to the police station where he was fingerprinted and photographed, and then was transported by a deputy sheriff of Pittsburg county and the county attorney of Pittsburg county to McAlester. That before leaving Oklahoma City he demanded to consult a lawyer but was refused this right. That when they arrived at McAlester the officers first took him to see Jess Dunn, warden of the penitentiary. That the warden told him he was guilty of embezzlement and the best thing he could do was to enter a plea of guilty. That his attorney, W. A. Lackey, came to the penitentiary while he was there talking to the warden and county attorney, and that he consulted with Lackey at the penitentiary. That the warden told him there that if he would plead guilty he would recommend a suspended sentence. That the next day he and his attorney went before the justice of the peace and waived a preliminary hearing and was bound over to the district court. That on September 20th he and his lawyer went before the district court, where he was arraigned on the charge of embezzlement, and entered his plea of guilty and asked that the pronouncement of sentence be postponed until November 1st. That he entered his plea of guilty thinking that he would receive a suspended sentence. That various postponements of sentence were had until January 9, 1941. This defendant further alleges that he has a valid defense to said charge in that he had an agreement with the Board of Affairs that when either party ran short of clothing material, they could borrow from the other and replace the borrowed material later.

The county attorney swore, in response to the defendant's application, substantially as follows:

That he made an investigation of certain transactions which occurred at the State Penitentiary, and as a result of this investigation filed charges against the two defendants. That after Blumenthal was arrested by police officers of Oklahoma City, he and a deputy sheriff transported Blumenthal from Oklahoma City to McAlester. That Blumenthal made the request before reaching McAlester that he be allowed to go by the penitentiary and talk to the warden. That at this special request of defendant, Blumenthal was taken to the penitentiary, and there, in a conversation with the warden and in the presence of the county attorney, he freely and voluntarily admitted all of the acts charged against him in the information.

That his attorney, W. A. Lackey, came to the penitentiary shortly after Blumenthal and the county attorney had stopped there and they were allowed to talk together privately. That thereafter both Blumenthal and his attorney expressed their intention and desire that Blumenthal plead guilty and requested the warden to send this defendant to the subprison at Stringtown.

That on September 20, 1940, the defendant, in the presence and by the advice of his counsel, pleaded guilty in open court to said charge, and requested the court to defer sentence until November 1, 1940, in order to give the defendant time to arrange his business affairs before entering the penitentiary. That on November 1, 1940, at the request of the defendant, sentence was postponed until November 15, 1940. On November 15, 1940, because of illness of one of the defendants, sentence of defendant was postponed to December 14, 1940. That on December 14, 1940, defendants requested that the court

postpone sentence until after Christmas, and, accordingly, sentence was further deferred until January 4, 1941, at which time each of said defendants made application to withdraw their pleas of guilty.

That defendant Blumenthal is a man of mature years, has a good education, and had a full understanding of the consequences of his action, and throughout all of the proceedings had the advice of able counsel.

Warden Jess Dunn swore that he talked to Blumenthal, but did not make him any promises, did not advise him not to employ an attorney, and did not tell the defendant that he would recommend a suspended sentence if he pleaded guilty. That defendant said he was guilty and intended to plead guilty, and after advising with his lawyer made the request of the warden that he be allowed to go to the subprison at Stringtown.

It was agreed that the members of the State Board of Public Affairs would testify that there was no agreement between the state and Blumenthal whereby clothing material would be exchanged if either of the parties ran short in the manufacture of work clothing.

The hearing on the applications of the defendants to withdraw their respective pleas of guilty was rather informal. Counsel for defendant and the county attorney each made a statement of their case and of the nature of the proof which they sought to introduce, and the court agreed to accept their statements as the evidence which would be offered for and against the application to withdraw the plea of guilty.

It is well settled that a plea of guilty should be entirely voluntary by one competent to know the consequences and should not be induced by fear, persuasion, promise, or ignorance.

Section 2961, O. S. 1931, 22 O. S. 1941 § 517, provides:

"The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted."

Under this statute it has been the uniform holding of this court that an application to withdraw a plea of guilty is addressed to the sound judicial discretion of the trial court.

After a consideration of the record with reference to the defendant Blumenthal, it is our conclusion that the defendant entered his plea of guilty after advising with able counsel; that he is guilty of the crime as charged in the information; that no inducements or persuasions were held out to him to induce him to plead guilty, and that the court did not abuse its discretion in refusing to allow him to withdraw his plea of guilty.

A different state of facts confronts us in connection with the application of the defendant Bennett. The proof on behalf of the defendant Bennett in connection with his application to withdraw his plea of guilty and to grant him a severance for trial is substantially as follows:

That on September 16, 1940, Jess Dunn, warden at the State Penitentiary, called defendant to his office. That the county attorney was there. That he was questioned concerning the disappearance of certain goods from the penitentiary which belonged to the state. That the warden there in the presence of the county attorney advised defendant that it would be the best thing for him to plead guilty and not to see a lawyer about the case. That if he would plead guilty, he would see to it personally that defendant would not have to serve a day in prison, but would get a suspended sentence. That those

statements were made in the presence of the county attorney.

That the warden talked to defendant's wife and his father and told them that it would be best for defendant not to hire a lawyer, but for him to go into court and plead guilty and that he (the warden) would see to it that defendant never served a day for the commission of this alleged offense, but that he would get a suspended sentence. That after the warden had talked to defendant's wife and father they talked to defendant and advised him that since he would not have to go to prison, they thought it best for him to enter his plea of guilty.

That on the day said case was set for preliminary hearing, the warden told defendant to waive preliminary hearing and enter a plea of guilty, and he, the warden, would see that defendant got a suspended sentence.

That defendant went to the courthouse without a lawyer; that W. A. Lackey was there representing defendant Blumenthal and the warden requested Lackey, as a favor to him, to appear for him (defendant Bennett) at the preliminary hearing. That defendant entered his plea of guilty to said charge solely because of the inducement and promise by the warden in the presence of the county attorney that he would be given a suspended sentence. That he did not have a lawyer at any time until he employed counsel to appear for him and present his application to withdraw his plea of guilty when it became apparent that the warden was refusing to recommend a suspended sentence.

That he has a good defense to said cause by reason of an agreement between the Board of Affairs and Blumenthal to exchange goods, and that the charge against him is no more than a technical charge arising out of the fact that there was a shortage in clothing material,

but that under the agreement such shortages might occur and either party be given an opportunity later to replace the material which had been taken, or pay its value. Defendant further stated that before they left the warden's office at the time of their conversation the county attorney told defendant that if he would plead guilty he would recommend a suspended sentence.

F. E. Bennett, father of defendant, testified that he was called over the telephone by the warden and asked to come to McAlester. That he came to Warden Dunn's office on the afternoon of September 19, 1940, and that the warden there said: "I'll tell you as I told Mack if he would plead guilty I will see to it that he will never serve a day in the penitentiary."

The wife of defendant Bennett testified that she talked to the warden of the penitentiary early in the morning of September 19th, and that the warden told her that he would see that defendant never served a day in the penitentiary, but would receive a suspended sentence if he would plead guilty. That later on, Halloween night, she talked to the warden again, at which time the warden told her that he was doing his best to have the charges against defendant Bennett dismissed, but that if he could not get the charges dismissed, he would see that he would get a suspended sentence. That she talked to her husband after her first conversation with the warden and asked him to enter his plea of guilty so that he could get a suspended sentence and get the case over.

It was further admitted that Mr. Lackey was asked by the warden to appear for the defendant Bennett, and that there was never any formal employment of him as attorney for Bennett.

The proof on the part of the state was a statement by the county attorney as to the facts relied upon by

the state to refute the contentions of the defendant, but which statement of the county attorney was admitted as evidence the same as if witnesses were present and sworn to testify to such statements, which treatment was likewise given to statements made by attorney for defendant.

The county attorney stated that he was called to the penitentiary on September 18, 1940, at which place he met the chairman of the Board of Affairs and the warden of the penitentiary and discussed the question of embezzlement of state property with defendant Bennett at that place. That Bennett admitted furnishing Blumenthal with state property under an agreement with Blumenthal that Blumenthal would pay him the sum of $100 per week. That Bennett was the only employee who had a key to the warehouse in which the goods in question were stored, and over a period of several weeks he furnished such material to Blumenthal and received as his pay the approximate sum of $500. The county attorney introduced the minutes of the court's proceedings in connection with the pleas of guilty which were entered, which recite that the defendants appeared in person and by their attorney, W. A. Lackey, waive reading of the information, waive arraignment and enter their pleas of guilty to the charge of embezzlement.

The county attorney specifically denied that he overheard the warden make a statement to defendant Bennett that "he would never serve a day in the penitentiary." That the warden did say that he would help defendant Bennett in any way that he could, but that said cause would depend entirely upon the district judge of Pittsburg county. That the county attorney never, at any time, stated that he would recommend a suspended sentence for defendant.

The affidavit of the warden was introduced and treated as his testimony. In this affidavit the warden admitted talking to defendant, his wife, and his father. The warden states that he did not tell these parties that he would see that defendant would never serve a day in prison, but that he did tell each of them that he would help defendant Bennett all that he could.

Mr. Lackey testified:

"Mr. Bennett has never paid me a dime and the only reason I appeared for him was at the request of the warden. When I walked up to Mr. Blumenthal, the warden said to me, 'Will you also appear for Mr. Bennett,' and I scarcely knew him at that time, and I said, 'Is that your wish?' and I say that now in justice to Mr. Bennett; that is the only reason I did so. I had never talked the facts over with him in the case."

In the case of Harjo v. State, 70 Okla. Cr. 369, 106 P. 2d 527, 528, it is stated:

"The general rule of law as stated by numerous decisions of this and other courts is that an application to withdraw a plea of guilty is addressed to the sound discretion of the trial court; that the law favors the trial of criminal cases on the merits and where it reasonably appears a plea of guilty was influenced by persons in authority or apparent authority which has led a defendant to believe that by entering a plea of guilty his punishment will be thereby mitigated, he should be permitted to withdraw the plea of guilty and to enter a plea of not guilty and the refusal to permit him to do so is an abuse of discretion."

In Fromcke v. State, 37 Okla. Cr. 421, 258 P. 927, it is held:

"A defendant in a criminal action should be permitted to withdraw his plea of guilty, given unadvisedly, either before or after judgment, where any reasonable ground is offered for going to the jury."

The defendant Bennett's case is one of those border-

line cases where there is ample argument to sustain either view this court might take of the court's action in refusing to allow the defendant to withdraw his plea of guilty. However, since the law favors the trial of criminal cases on the merits, we have resolved this close question involved in Bennett's case in favor of the defendant.

Here, although the county attorney introduced the minutes of the court's proceedings to show that defendant had the benefit of counsel to advise with him, the explanation by defendant as to the reason that Mr. Lackey appeared is undisputed. Every step taken by this defendant was done at the instance and request of the warden of the State Penitentiary, who was the prosecuting witness in this cause and the employer of defendant. Part of the statements of the warden were made in the presence of the county attorney with his silent acquiescence. Certainly it must be said that under those circumstances the representations made to this defendant were from a person of apparent authority. The warden was the prosecuting witness. It was through his request that the county attorney entered the case and filed the charges. The warden states, in his own affidavit, that he told defendant Bennett that "he would do all in his power to help him."

The trial court in his statement in the record, before pronouncing sentence upon the defendants, indicated that if the warden had appeared in open court and recommended a suspended sentence, he would have followed the recommendation. The reasons why the warden did not do so are not in the record. No explanation was given in the warden's affidavit nor in the county attorney's statement to the court. The inference is left from certain statements by counsel that the warden did not appear and recommend a suspended sentence because of orders received by him from the Board of Affairs. It

is evident, however, that the warden held out certain inducements to Bennett in the presence of the county attorney which were not made to defendant Blumenthal, which inducements were the primary cause of defendant Bennett entering a plea of guilty without consulting a lawyer.

It is our conclusion, after reviewing all of the facts and circumstances surrounding the case of the defendant Bennett, that under the record the court abused his discretion in not allowing the defendant to withdraw his plea of guilty. We arrive at this conclusion notwithstanding the fact that the judgment imposed against this defendant was not excessive; that in the trial of the case he possibly will secure a more severe punishment, as jurors in this state have generally been very positive and certain in the punishment which they mete out to individuals who have been stealing from the state.

It is therefore ordered that the judgment of the district court of Pittsburg county, as to the defendant I. H. Blumenthal, be and the same is hereby affirmed.

It is further ordered that the judgment of the district court of Pittsburg county, as to the defendant F. M. Bennett, be and the same is hereby reversed and remanded to the district court of Pittsburg county, with instructions to allow this defendant to withdraw his plea of guilty and enter a plea of not guilty.

BAREFOOT, P. J., and DOYLE, J., concur.