PLEASANT TOBLER v. STATE.

No. A-10845.   May 26, 1948.

(194 P. 2d 202.)

Tom Payne, of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BAREFOOT, P. J.   Defendant, Pleasant Tobler, was charged jointly with George Pittman and Wilson Miller in the district court of Okmulgee county with the crime of larceny of four Duroc Jersey red hogs; was granted a severance, tried, convicted, sentenced to serve a term of three years in the State Penitentiary, and has appealed.

It is contended that this case should be reversed for the reason that the evidence was not sufficient to support the verdict of guilty, and that the verdict is contrary to the evidence.

The defendant and his codefendants, George Pittman and Wilson Miller, were charged with stealing four hogs from William Hadley, a farmer living five miles south of Beggs, in Okmulgee county, on May 15, 1946. The defendants and the Hadleys were Negroes.

The statute under which the defendants were charged is 21 O. S. 1941 § 1716, which is as follows:

"Any person in this State who shall steal any horse, jackass, jennet, mule, cow, or hog, shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three years, nor more than ten years; * * *."

William Hadley testified to the ownership of the hogs, and that they were allowed to run on the open range. The hogs returned home each night to be fed. They were fed on the morning of May 15th, but did not return home that night. He further testified that he lived about 250 yards from the home of Wilson Miller. About 7 o'clock on the morning of the date in question, he saw the defendant and George Pittman at the home of Wilson Miller. He identified the date by reason of it being his birthday, and he was 81 years of age. He testified that the hogs were taken without his consent or knowledge.

Lizzie Hadley, the wife of William Hadley, testified as to the description and ownership of the hogs, and of their return home each night to be fed. They did not return on the night of May 15, 1946. It had been raining and she went across the creek on the morning of May

16th to the place where the hogs ranged, looking for them. She saw where the grass was mashed down and where the hogs had been piled up. She saw the defendant and George Pittman about 7 o'clock on the morning of May 15th, at the home of the codefendant Wilson Miller, and both of them had guns which looked like 22 calibre rifles. About 10:30 or 11 that morning, she heard gunfire in the direction of where it was later found that the hogs had been killed. About 3 o'clock that afternoon, she again saw both of these parties at the home of Wilson Miller.

Howard Williams, also a Negro farmer, testified that he had been living in that community since February, 1946. About 4 o'clock on the afternoon of May 15, 1946, he was in the bottom looking for his horses. He had known the defendant, and at that time saw him carrying a red hog on his shoulder, with a gun under his arm. The hog's head had been cut off. The codefendant George Pittman was with the defendant at the time, and was carrying a hog, wrapped in a cotton sack. He testified that the Hadleys came over the next day looking for their hogs, and he told them about the incident.

Monroe Griffin, age fifteen years and a nephew of Howard Williams, testified that he lived with his uncle. That on May 15, 1946, he went with his uncle into the bottom to look for the horses, and his dog smelled two dead hogs, and found them there in the pasture. One was uncovered, and the other was in a sack. He saw a small bullet hole in the right side of one of the hogs, and it looked like a hole made with a 22 rifle.

When these witnesses had testified for the state, the state rested. No demurrer to the evidence or motion for a directed verdict was made, and after the opening state-

ment to the jury, the defendant placed Mr. and Mrs. L. A. Reynolds, residents of Okmulgee, on the stand. Mr. Reynolds worked for the Phillips Refinery. He and his wife both testified that on the afternoon of May 15, 1946, they, with a fifteen-year-old boy by the name of Randolph, went to the home of defendant for the purpose of going squirrel hunting. They fixed the date by reason of it being the first day of squirrel season. They testified that they arrived at defendant's home about 3 or 3:30 in the afternoon, and hunted until very late. That they were with defendant all the time on the afternoon of May 15th, and that he did not go to the Hadley premises during that time.

Defendant and his wife Addie Tobler both corroborated the testimony of the Reynolds, and defendant specifically denied killing or taking the hogs of the Hadleys. On cross-examination defendant admitted having been previously convicted of the crime of grand larceny, and being sentenced to two years in the State Penitentiary; and to having pleaded guilty in the county court of Okmulgee county to a charge of violating the prohibition laws.

The state in rebuttal put on the witness stand one of the codefendants, George Pittman. He testified that he was acquainted with the defendant, and with Wilson Miller. He was living at Jones, Okla., on the date in question, but had previously lived in the Beggs community. He returned there about May 10th, about five days before the hogs were stolen. About 8 o'clock on the morning of May 16, 1946, the morning after it is alleged the hogs were stolen, this witness went to the home of Wilson Miller. He and Miller went in Miller's two-seated Chevrolet car to the town of Beggs, in Okmulgee coun-

ty. They went by the home of a Mr. Taylor, and a white boy got in the car with them. Wilson started to turn off to go up to the home of the defendant, Pleasant Tobler. The white boy, whose name was Jimmie Ray, got out of the car, and the witness also got out, telling Miller: "Pleas and I don't get along, and I better wait for you." Wilson Miller then went about half a mile to the home of defendant, and soon returned with the defendant in the car with him. They stopped, and the witness, George Pittman, got in the car with them. Miller and the defendant had a conversation after they had gone a short distance, and the car stopped and defendant got out of the car and went out under some grape vines near the road and brought out a red hog that was dead. Miller told him to hurry up, and he brought a second hog and "Miller opened the back of the car and they put them both in there." The hogs were described as being red and about the size of the Hadley hogs. They went from the place where the hogs were placed in the car through a part of the town of Beggs to the home of Joe Adams, a cousin of the defendant. Neither Adams nor his wife was at home, but a boy and four or five small children were there. The two hogs were unloaded by Miller and the defendant at the Adams home. In going to Beggs, they passed the boy, Jimmie Ray, who had gotten out of the car, but they did not pick him up. When they went back to Beggs, Wilson bought some potato slips and two sacks of sawdust. They returned to the Miller home and the witness set out the potato slips on the evening of May 16th. On cross-examination this witness admitted that he had been previously convicted of the crime of manslaughter, in Seminole county, and received a sentence of seven years in the penitentiary.

The witness Jimmie Ray corroborated the testimony of George Pittman as to riding in the automobile with Wilson Miller and Pittman, and of getting out of the car and being passed by them as he was walking towards Beggs. He testified to seeing Pittman and Wilson Miller when they passed him, but did not see the defendant, who was in the back seat.

The defendant in rebuttal placed Joe Adams on the stand, and he testified that no hogs were brought to his home on May 16, 1946, or at any other time.

Joe Adams, Jr., age sixteen, testified for the defendant, and stated that he left home on the morning of May 16, 1946, about 8 o'clock. That no one brought hogs there while he was at home, and he knew nothing about it at all.

Wilson Miller testified for the defendant on rebuttal. He corroborated the witness George Pittman as to his coming to his house on the morning of May 16, 1946, and of their going in the car to the town of Beggs, and of the boy Jimmie Ray riding part of the way with them, and of George Pittman and Jimmie Ray getting out of the car when he returned to go to the home of the defendant Pleasant Tobler. He went there to see about a planter. He saw the defendant at his home and talked to him about the planter. The defendant did not leave with him in the car, and no hogs were picked up or put in the car by him or by the defendant.

From the foregoing statement, it will be noted that there is a direct conflict in the evidence. There is some conflict in the date, whether it was May 15th or May 16th. It has long been the rule of this court that a case will not be reversed where there is a conflict in the evi-

dence, and the evidence is sufficient to sustain the judgment and sentence. The jury having passed upon the evidence in this case, this court will not set aside the verdict. Graham v. State, 80 Okla. Cr. 159, 157 P. 2d 758; Brown v. State, 82 Okla. Cr. 344, 169 P. 2d 772; Chapman v. State, 84 Okla. Cr. 41, 178 P. 2d 638; Young v. State, 84 Okla. Cr. 71, 179 P. 2d 173.

The defendant presented the defense of an alibi. This was a question for the consideration of the jury, and the issue was fairly submitted to the jury in the instructions of the court. All of the evidence revealed that defendant was in close proximity to the scene of the crime on the date alleged in the information. Gregg v. State, 69 Okla. Cr. 103, 101 P. 2d 289.

Defendant's second assignment of error is that the court erred in refusing to sustain the motion for new trial by reason of newly discovered evidence. This motion is based upon the following statement made in the motion:

"That the star witness for the state, George Pittman, has, since said trial, admitted in the presence of defendant's counsel and Tom Powell, deputy sheriff, that the statements he gave incriminating this defendant, were absolutely false and that he did not see Tobler take hogs from the thicket of a grapevine and that Tobler did not accompany him and Miller on the trip to Beggs, Oklahoma, and did not know, of his own knowledge, that this defendant had anything to do with the hogs."

Affidavits to support the motion for new trial were not filed but the court permitted the introduction of evidence to support the motion, and the codefendant George Pittman, who was confined in jail, was placed upon the witness stand and testified that the evidence given by him at the time of the trial of defendant, and also that of the

codefendant Wilson Miller, was false in so far as it related to his going with Miller and the defendant and picking up the two hogs and placing them in the car and taking them to the home of Joe Adams. He did testify that he had seen Miller in close proximity to where the hogs were killed and that he was covered with blood, and told witness he had killed a squirrel, and the witness said to Miller, "You must have carried it on your shoulder."

Solomon Spring and the defendant Pleasant Tobler also testified at the hearing on the motion; and Tom Powell, a deputy sheriff, testified to hearing the witness George Pittman state in the sheriff's office that a part of the evidence given by him at the former trial was false.

With reference to granting a motion for new trial on the ground of newly discovered evidence, we are confronted with the rule so often announced by this court, that this question is addressed to the sound discretion of the trial court, and that such motion should not be sustained unless there is a reasonable probability that the newly discovered evidence would have changed the result of the trial. Coulson v. State, 48 Okla. Cr. 206, 291 P. 152; Cummings v. State, 57 Okla. Cr. 428, 48 P. 2d 879; John v. State, 79 Okla. Cr. 50, 151 P. 2d 808; Grounds v. State, 81 Okla. Cr. 11, 159 P. 2d 275.

The question of witnesses who have testified in the trial of a case, and thereafter state that the evidence given by them was untrue and false, was discussed in the case of Whitworth v. State, 80 Okla. Cr. 239, 158 P. 2d 364, 159 P. 2d 277. There this court said:

"The practice of granting new trials upon affidavits of persons who have been convicted and then change their testimony, admitting that they had committed perjury, is not looked upon with favor by the courts."

We have carefully read the testimony given by the witness Pittman on the hearing of the motion for new trial. It is not at all impressive, and we can readily see that it did not impress the trial court, who immediately overruled the motion.

We shall not discuss further the reasons for the above rule, as they are fully stated in the Whitworth case, supra, and the authorities from this and other courts cited and quoted therein.

As stated in the brief of the state, there was sufficient evidence in the record in this case to sustain the conviction of the defendant, even though the testimony of the witness George Pittman be disregarded. His testimony did, however, strengthen the evidence of the state, if believed by the jury.

Finding no error in the record, the judgment of the district court of Okmulgee county is affirmed.

JONES and BRETT, JJ., concur.