## WARD v. STATE.

No. A-11032. Oct. 19, 1949.

(210 P. 2d 790.)

Coffey & Coffey, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error Arley Ward, defendant below, was charged in the district court of Tulsa county, Okla., with the crime of murder. The information alleged that on June 22, 1947 near Sand Springs, Okla., in Tulsa county, he shot Earl Newell his brother-in-law with a .38 caliber Smith and Wesson pistol inflicting such bodily wounds that as a result thereof Newell died on June 24, 1947. The case was fully tried, and the court ready to instruct the jury, and after a short requested recess, by and with the aid and advice of able

counsel, the defendant withdrew his plea of not guilty, entered a plea of guilty, and was sentenced on September 30, 1947, to 40 years in the penitentiary.

The facts briefly were these: The Newells had had a fish fry at their home with beer and whisky to drink. After they had dined and drank from 3 p. m. to 7:30 p. m., the defendant wanted to go to town and got in the Newell's car with the intention of driving the same into town. Mrs. Newell, his sister, told him not to drive, that he was too drunk to do so. (In this connection the other witnesses said the defendant was not drunk.) Mrs. Newell's married daughter, Earline Rotramel, suggested that she could get him to move out from under the wheel and she would drive the car. She told him to move over, and he got out. Her husband, Bill Rotramel, and her little 5-year old son got in the front seat with her. When the defendant got out of the automobile he reached into the back of the car in the back seat and got a small duffel bag containing his effects and started down the road by himself. Before they started the automobile, he turned around coming back in the direction of the automobile. As he got opposite the car he drew the .38 caliber pistol and pointed it in the direction of the occupants of the car and snapped it twice. Then he apparently realized that the pistol was unloaded. When this occurred to him he took shells from his pocket and loaded it. Earline Rotramel got out of the car and tried to restrain him, whereupon he knocked her down. Her father, Earl Newell, the deceased, she said approached him and told him "Let me have the gun, that nobody was mad at him". The defendant said "You ain't going to get this gun". Then Earl Newell turned around and started toward the house, the defendant following him. On the inside defendant stated "You God damn

sons of bitches think you have got me. You know I haven't got any money and no way to get around. I will show you, every God damn one of you". When the latter statement was made he was looking toward Mrs. Newell. Mr. Newell was standing in the doorway between the kitchen and the bedroom. Suddenly Ward turned around and shot Earl Newell in the left side, the bullet passing through his liver and resulting in his death. The defendant offered no evidence in his own behalf. This was in substance the state's case, after which it rested. It appears from the foregoing that the defendant in a fit of drunken anger maliciously and premeditatedly killed Earl Newell. The defendant offered no evidence in his own behalf, but likewise rested. There remained nothing to do in the trial except for the court to give his instructions and submit the issues to the jury. At this stage of the proceedings the defendant, after conference with his attorney and the county attorney, informed the court he desired to withdraw his plea of not guilty and enter a plea of guilty to first degree manslaughter and waived the time for sentencing and requested to be sentenced immediately. The record in this regard reveals the following, to wit:

"Mr. Coffey: Yes, your Honor please, we have agreed, the County Attorney and myself and the defendant, subject to Your Honor's approval, that he make certain recommendations, that we enter a plea of guilty and now withdraw our former plea of not guilty and enter a plea of guilty?

"Mr. Devine: Do you waive the time for sentence, Mr. Coffey? Mr. Coffey: Yes, sir. Mr. Devine: If the Court please, in this case, the defendant has heretofore been convicted of armed robbery and at this time he has a revocation of his parole. He has quite some time to do under that former sentence. In this particular case

it is the recommendation of the State that the defendant be sentenced to a period of 40 years in the State Penitentiary.

"It is further the recommendation of the State that this court join with the County Attorney in recommending to the Pardon and Parole Board that the parole revocation as now stands will be computed and he would do his one sentence of 40 years.

"The Court: The plea of guilty, of course, entered to manslaughter in the first degree? Mr. Devine: Yes, sir, we also recommend that the charge be reduced to manslaughter in the first degree.

"Mr. Coffey: Yes, sir.

"The Court: Do you desire date fixed at this time? Mr. Devine: No, we desire that sentence be passed at this time. Mr. Coffey waives further time. Mr. Coffey: Yes, we waive that.

"The Court: Arley Ward, you have heard the statement of you counsel here? Arley Ward: Yes, sir. The Court: That you now desire to withdraw your plea of not guilty in this case and enter a plea of guilty to manslaughter in the first degree? Mr. Ward: Yes, sir. The Court: Is that your desire? Mr. Ward: Yes, sir. The Court: How old are you? Mr. Ward: 38.

"The Court: Now, Arley Ward, you have been charged in this court, by information, with the crime of murder and upon recommendation of the County Attorney, that charge has been reduced to manslaughter in the first degree and you have now entered your plea of guilty to that charge and you may now have your sentence pronounced, if that is your desire, or deferred until a later time. Do you now desire to have your sentence pronounced at this time? I understand from your counsel that you do. Mr. Ward: Yes, sir, and may I ask this, in the commitment to the institution, that it shows on the commitment that this recommendation that the County Attorney has just made.

"The Court: Well, the recommendation will be part of the record here, but it would not show in the commitment. Mr. Ward: This could not be a notation at the bottom of that? This recommendation at the bottom? Mr. Devine: The way that will have to be handled is, we request that the court join with the County Attorney's office and we will prepare later, with the court's signature and the County Attorney's signature, to the parole board, which will go to the warden of the penitentiary, that the recommendation of the revocation be commuted. Mr. Coffey: We will get a certified copy of that. Mr. Ward: But if it does show on the bottom of the commitment that this recommendation has been made by the court, then the parole board, which goes according to that, that the court has seen fit to set that aside. The Court: Well, I don't understand that to be true. The only thing I am asking you now is whether you want to be sentenced at this time. If you do, we will pass the sentence, the other matter will be taken care of. Mr. Ward: Yes, sir. The Court: Do you desire to have sentence pronounced at this time? Mr. Ward: Yes, sir. The Court: Do you have anything to say at this time why judgment and sentence of the court should not be pronounced against you? Mr. Ward: Sir, I just want to say this, make a statement of this, the County Attorney has recommended 40 years. He told me he would recommend that, due to the fact I don't deny that the boy was shot or anything like that, but I will say this, the man that is now dead was closer to me than any brother he had, and that is all.

"The Court: Very well, in line with the recommendation made by the County Attorney, and the court's own judgment of this case, of course this took place out there where you were all drinking, and I am inclined to agree with the recommendation made here. Voluntary drunkenness does not excuse one from crime, but it is in mitigation, sometimes, of the punishment to be inflicted upon a man who commits the crime; so the sentence of the court is pronounced against you, and will be that you be confined in the State Penitentiary at McAlester for a pe-

riod of 40 years and you will be committed to the sheriff of this county and remanded to his custody for the purpose of carrying out that sentence.

"That will be all."

In this connection the record further reveals that the defendant, Arley Ward, was not inexperienced in courtroom proceedings. In considering the foregoing it is well to here note that the defendant had a long prior criminal record, having been sentenced to the Granite Reformatory for burglary for five years, to the Federal Penitentiary at Leavenworth for violation of the Dyer Act for interstate transportation of a stolen automobile for which he received five years, and was placed on probation; that subsequent thereto he was convicted in Murray county, Okla., and sentenced to the penitentiary at McAlester for a term of 25 years for robbery with firearms. The foregoing appears from his record supplied by the Federal Bureau of Investigation. The record herein further discloses that he received another sentence for a year and a day, in Garvin county, for obtaining money under false pretenses. At the time the offense herein was committed he was out on parole from the 25-year sentence for robbery with firearms which parole had been revoked.

The defendant contends he entered his plea with the understanding that he would be sentenced to 40 years in the penitentiary and that the state would recommend to the Pardon and Parole Board that the remainder of the time on the 25 year sentence from Murray county on the armed robbery conviction be permitted to be computed so that the balance of the 25-year sentence and the 40-year sentence herein imposed would both be served by the defendant by doing the time only on the 40-year sentence herein imposed. It was then believed that be-

cause the parole had been revoked on the 25-year sentence for robbery with firearms, defendant would have an additional 14 years to do on that sentence. It developed, however, some time later and after the imposition of the sentence herein, that he had with allowances for good behavior only 6 months and 23 days remaining on said sentence to do. The record further discloses that the county attorney, acting for and on behalf of the state, in a letter dated October 1, 1947, sought to discharge said obligation to the defendant by recommending to the Pardon and Parole Board that he be permitted to do the remaining time on the robbery with firearms conviction for 25 years concurrently with the 40-year sentence herein imposed. It further discloses that the next day after the imposition of the sentence the defendant became dissatisfied and wanted to withdraw his plea of guilty, and on October 2, 1947, filed a motion to vacate the judgment and requesting a new trial. The trial court within its sound discretion overruled said motion. The defendant now complains that the action of the trial court in overruling the motion to vacate and set aside the judgment and sentence and to permit defendant to change his plea of guilty and to re-enter his plea of not guilty and grant him a new trial is contrary to the law and amounts to an abuse of discretion.

The sole and only question involved in this appeal goes to the proposition, in overruling said motion, did the court abuse its discretion? In support of his contention defendant cites numerous authorities consisting principally of Ex parte Farrar, 74 Okla. Cr. 390, 126 P. 2d 545; Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645; Sawyer v. State, 73 Okla. Cr. 186, 119 P. 2d 256; Sloan v. State, 54 Okla. Cr. 324, 20 P. 2d 917; Porter v. State, 58 Okla. Cr. 54, 49 P. 2d 234, 235; Bennett v. State,

75 Okla. Cr. 42, 128 P. 2d 253. We find no fault with the rules announced therein save and except that examination of them discloses they do not apply to the situation confronting us. Each of such cases must be decided upon its own merits.

Here the trial court to all practical purposes had completed the trial. The withdrawal of the plea of not guilty and entering of the plea of guilty herein we are convinced was not the result of the county attorney's recommendation, but was founded upon fear of what the jury might do if the case was permitted to go to them. Upon the facts contained in this record the jury could have given the defendant either life imprisonment or sentenced him to electrocution in the electric chair. The record would have supported such a finding. For this reason it appears that the defendant was not willing to speculate upon the results in the hands of the jury but elected after all of the evidence was heard to speculate on the results in the hands of the judge who, upon the recommendation of the county attorney, sentenced the defendant to 40 years in the State Penitentiary. Such recommendations are not an uncommon occurrence on pleas of guilty in criminal cases. The trial court was not bound, however, by the recommendation of the county attorney. It appears that the sentence herein imposed was the result of his "own judgment in this case", except, as he said in the hearing on the motion for new trial, had it not have been for the county attorney's recommendation, he would probably have given him 50 to 60 years. This court does not believe the plea of guilty was induced because of the recommendation of the 40-year sentence and the agreement to get favorable action from the parole board as to the unserved portion of the 25-year sentence, but from fear of the jury. In fact,

we are of the opinion that such matters were only a favorable incidence to the plea of guilty. The matter of granting permission to withdraw a plea of guilty and granting a new trial was a matter within the trial court's sound discretion, which could only be disturbed by this court upon an abuse thereof. Sanders v. State, 72 Okla. Cr. 85, 113 P. 2d 198, wherein it was said:

"The granting or denying of permission to withdraw a plea of guilty and to substitute a plea of not guilty is a matter within the sound discretion of the trial court, and its action will be upheld unless an abuse of such discretion clearly appears from the record."

And at page 90 of 72 Okla. Cr., at page 200 of 113 P. 2d therein:

"The decisions of this court clearly state that in order to uphold the contention of an accused that a trial court has abused his discretion in refusing to allow a plea of guilty to be withdrawn and a plea of not guilty substituted therefor, it must be apparent from the record that the plea has been made unadvisedly, through ignorance, inadvertence, influence, or without deliberation, and that there is a defense that should be presented to a jury."

Hart v. State, 29 Okla. Cr. 414, 233 P. 1095, 1096, therein cited in support of the foregoing rule. An examination of the record herein discloses that the plea of guilty was entered advisedly, that it was not entered through ignorance or inadvertence and that it was not by reason of the court being influenced by the county attorney, but was because of the fact that the defendant believed he would receive more favorable action by the court than he would at the hands of the jury before whom said case had virtually been tried. The plea of guilty was certainly entered after deliberation during what virtually amounted to a full trial, and upon realization that there was no defense to the charge of murder.

The trial court certainly did not abuse its discretion in refusing to vacate and set aside the judgment and sentence herein imposed and to permit the defendant to change his plea of guilty and re-enter his plea of not guilty and to grant him a new trial. As aptly stated by the trial court in overruling the motion to vacate the judgment and grant a new trial, "it would be just playing with justice to say that after a man has come in here and entered his plea of guilty, an intelligent man, a man of his age, 38 years old, he has been in the penitentiary before, he knows the consequences of these things, to say that he could come in, have this judgment set aside, be tried over, take another gamble at it; he had his chance to go to the jury and let the jury determine his punishment by their verdict, but he did not elect so to do. He had that right and he did not avail himself of that right and he has nothing, in the judgment of the court, in this application that would justify the court in granting the motion." In our opinion, the defendant is most fortunate in that he was so ably represented. It is only because of such representation that he got off with 40 years imprisonment instead of being found guilty of murder and being sentenced to life imprisonment or electrocution in the electric chair. For all of the above and foregoing reasons the judgment and sentence is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.