Arley WARD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14002.

Court of Criminal Appeals of Oklahoma.

July 31, 1968.

Ed Parks, Don E. Gasaway, Jay D. Dalton, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

Arley Ward, plaintiff in error herein, was first tried in the district court of Tulsa County in 1947, on a charge of murder. The information alleged that on June 22, 1947 near Sand Springs, Oklahoma, he shot his brother-in-law, Earl Newell, with a .38 caliber Smith and Wesson pistol. Newell died two days later, on June 24th.

After two days of trial, Arley Ward withdrew his "not guilty" plea, and entered a plea of "guilty" to first degree manslaughter. Thereafter he was sentenced to serve forty years in the State Penitentiary. The appeal from that conviction is found in Ward v. State, 90 Okl.Cr. 120, 210 P.2d 790. The case was affirmed.

Subsequent to the time of his conviction, plaintiff in error filed a petition for writ of habeas corpus seeking his discharge from the penitentiary, which was denied. Ward v. Raines, Okl.Cr., 360 P.2d 953.

Petitioner then filed a petition for writ of habeas corpus with the United States District Court for the Eastern District of Oklahoma, which was denied by that Court. He appealed that decision to the United States Court of Appeals, Tenth Circuit. That Court stated: "We are here concerned with one issue: that is, was Petitioner's plea of 'guilty' voluntary, or was his plea made under circumstances showing it to be involuntary, upon the basis of promises made by the prosecution, and tacitly by the Trial Judge." The case was remanded to the District Court for further findings of fact on the one issue, as stated.

The United States District Court docketed the matter for hearing, in accordance with the United States Circuit Court order, and on February 25, 1965 issued its findings of fact and order, in that Court's case

No. 5442–Civil. In its findings the Court found that plaintiff in error's plea of "guilty" to the manslaughter charge, was involuntarily entered and granted the writ of habeas corpus, but stayed the order for sixty days, "to permit the State of Oklahoma, if it so elects, to take action in accordance with the law, and this order, or to seek review of this order." The United States District Court's specific finding of fact related:

"[T]he Court finds that the prosecuting attorney, the trial judge, and the petitioner's attorney, represented to petitioner that the remaining portion of his twenty-five year sentence for armed robbery imposed by the District Court of Murray County, Oklahoma would run concurrently with the forty-year sentence imposed by the District Court of Tulsa County, Oklahoma, and with this understanding and reliance * * * the petitioner entered his plea of guilty."

The State of Oklahoma did not seek review of the United States District Court order, but instead initiated proceedings to recommence plaintiff in error's trial on the original murder charge. The record of those proceedings and the ensuing trial constitute the case-made record proper, now before this Court on appeal. Hereafter, plaintiff in error will be referred to as "defendant", as he appeared in his Tulsa County District Court trial.

Prior to the commencement of defendant's second trial, the trial court ordered the case-made of defendant's first trial prepared at State expense. Then, on April 27, 1965 defendant filed his "Plea to Jurisdiction, Plea of Acquittal of Offense Charged, and Motion to Dismiss by Reason of Former Jeopardy". The trial court overruled defendant's motions.

On October 11, 1965, with all parties being present and announcing ready for trial, a jury was selected and sworn to try the case a second time. At the commencement of trial defendant's special motions were again entered, overruled, and exceptions allowed. Three days later, on October 14, 1965 the jury returned its verdict

of "guilty" to the charge of murder, and fixed defendant's punishment at life imprisonment.

Motion for new trial was filed on October 25, in which four errors of the trial court were cited. However, in the petition in error filed in this Court, eight errors are listed, which are discussed under three separate propositions in defendant's brief, and supplemental brief.

Defendant was represented at his trial by Messrs. Ed Parks, Don E. Gasaway, and public defender Brian Henson. The appeal to this Court was perfected by the same attorneys, except that the Tulsa County Public Defender for Appeals, Mr. Jay D. Dalton, replaced Mr. Henson.

Defendant's first proposition states: "The court abused its discretion in not sustaining plaintiff in error's motion for new trial."

In pressing this proposition, defendant contends that the discovery of new evidence, which was not otherwise known to him, could not have been found by due diligence prior to his trial; and that it was pertinent, proper and material to his defense; and as such, it was sufficient to warrant the granting of a new trial. Defendant's witnesses were not present in court, when defense counsel outlined the expected testimony, so the matter was continued to a later date.

On November 15, 1965 the court heard the testimony of two witnesses: Mrs. Viola McAdoo, a sister of the deceased Earl Newell; and Mr. Billy Bob Sperry, a half-brother to the defendant. At the conclusion of the hearing, the court overruled defendant's motion for new trial, and at defendant's special request judgment and sentence was immediately passed, sentencing him to life imprisonment in the State Penitentiary.

■ We believe the trial court did not abuse its discretion in overruling defendant's motion for new trial. Whether or not the motion for new trial shall be granted is clearly within the discretion of the trial court, so long as that discretion is not abused. See: Walters v. State, Okl.Cr., 403 P.2d 267.

■ It was defendant's effort to introduce the testimony of Mrs. McAdoo on the basis of an alleged dying declaration made to her by the deceased. However, we observe on page 608 of the case-made, after several attempts were made to introduce the testimony as a dying declaration, the trial court made specific inquiry of the witness by asking her, "What did he say about dying? That is what I want to know, Ma'am"; to which the witness replied, "Nothing". We observe also defense counsel admitted that the testimony of both witnesses was hearsay, when he informed the court: "* * * [A]ll this testimony may be hearsay, but on rebuttal I think it would have a very direct influence on what the jury would believe, and certainly go to the credibility, or at least would tend to impeach many of the State's witnesses on direct examination."

When the trial court overruled the motion for new trial, we observe the court correctly stated: "The court finds, under the law as we know it, it [the testimony] does not constitute newly discovered evidence, in that the material matters testified to by the witnesses this morning were only impeaching in character. * * *"

■ The fourth paragraph of the syllabus in Hiatt v. State, 67 Okl.Cr. 372, 94 P. 2d 262, recites:

"A motion for new trial upon the ground of 'newly discovered evidence' is not sufficient where it only tends to discredit or impeach the witness for the state and especially where it would not change the result of the trial."

■ This rule appears to be even more applicable when the newly discovered evidence is admittedly hearsay. We therefore consider the trial court's ruling to have been proper. We repeat also, the holding in Walters v. State, Okl.Cr., 403 P.2d 267:

"The granting of a new trial on the ground of newly discovered testimony is a matter largely within the trial court's

discretion and is not to be exercised except where there is reasonable probability that, if such evidence had been introduced, different results would have been reached. See: England v. State, Okl.Cr., 276 P.2d 270; Tobler v. State, 87 Okl. Cr. 25, 194 P.2d 202."

Defendant's second proposition states: "The court erred in giving instruction number 15 over defendant's objection."

The instruction complained of pertained to defendant's *flight* from the scene, after the shooting occurred. The trial court's instruction reads as follows:

"You are instructed that evidence has been offered tending to show flight by the defendant shortly after the commission of the crime alleged against him in the information. If you find from the evidence that the defendant did at some time flee from the place of the commission of such alleged crime, and that such flight was induced by his apprehension of being charged with a public offense by reason thereof, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of his guilt or innocence."

Defendant relies on Wilson v. State, 96 Okl.Cr. 137, 250 P.2d 72, to support this proposition. He refers to this Court's statement in the Wilson case, wherein it was stated, on page 76: "The court should first define flight in his instructions to the jury." On this premise, defendant bases his contention for reversal of his conviction. However, as the Attorney General points out in his brief, this Court made some distinction of the statement found in Wilson v. State, supra, when in the case of Denney v. State, Okl.Cr., 346 P.2d 359, 366, it was held:

"This Court in Wilson v. State, 96 Okl. Cr. 137, 250 P.2d 72, a case where defendant denied flight, and introduced evidence in explanation, there approved an instruction covering flight as applicable to a case of that kind. It was also suggested the trial court before giving such

instruction should define flight. The court did not do that in this case, but *our attention has not been called to a case, and we know of none from this Court, holding that such failure would constitute reversible error."* (Emphasis added)

The situation is no different in this case. We therefore follow the later decision of Denney v. State, Ibid, i. e., the failure to define "flight" does not, under these circumstances, and standing alone, constitute reversible error. However, in the Wilson case, we observe the court made further reference to Compton v. State, 74 Okl.Cr. 48, 122 P.2d 819, 821, wherein it was said:

"The question of flight is one of fact and not of law, and, where the question is controverted, the court in its instructions should not assume that defendant fled, but if any instruction upon the question of flight is given, it should be submitted to the jury as a question of fact."

In the case at bar, the trial court's instruction clearly states such question to be one of fact for the jury to determine. There is no contention that the defendant did not leave the scene, because defendant related in his direct testimony how he departed from his sister's automobile, returned to the vicinity of his brother-in-law's home—where the shooting occurred; hid in the high weeds; that the next morning he took a carbine from his brother-in-law's house and left the vicinity. He was arrested the next afternoon after the shooting occurred. The only point of conflict appearing in the testimony concerns the defendant's state of mind when he departed from his sister's automobile, i. e., whether or not he was angry with her, and the other occupants, and was suspicious that they would turn him to the authorities; or, as the defendant contended in his testimony, that he didn't feel the need to go to the hospital (even though he knew he was bleeding from the cut caused when he was hit with a beer bottle); so he asked to be let out of the automobile.

However, the defendant himself testified as to where he went and what he did, after he left his sister's automobile, which constitute the facts concerning the question of flight.

██ Therefore, it logically appears proper for the jury to consider all the testimony and thereafter determine the question of fact, to-wit: did the defendant's actions indicate his flight to avoid being charged with a crime? Likewise, it is the duty of the court to instruct the jury on all questions of fact for the jury to determine.

We are of the opinion instruction number 15 was properly given for the jury's consideration. We believe also that when the instruction is considered in its entirety, it properly places the question of fact before the jury, as well as that part of the instruction which sufficiently described "what constitutes flight", for the purpose of the instruction.

The last of defendant's propositions states "Error of the Court in refusing to sustain the defendant's Plea of Jurisdiction, Plea of Acquittal of Offense Charged, and Motion to Dismiss by Reason of Former Jeopardy."

It is defendant's first position that his motion to dismiss by reason of former jeopardy should be sustained, and this Court should discharge defendant; but in the alternative, that this case should be remanded to the district court of Tulsa County for a new trial on a charge of first degree manslaughter.

██ In support of his contention defendant relies on Watson v. State (1924), 26 Okl.Cr. 377, 224 P. 368; Hunter v. State, Okl.Cr., 350 P.2d 319; U. S. ex rel. Hetenyi v. Wilkins, Warden, 2 Cir., 348 F.2d 844; Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, 61 A.L.R.2d 1119; People v. Henderson, 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677; and the doctrine of "autrefois acquit" (once a person has been convicted of a lesser included offense and successfully appeals, he cannot be tried for any greater charge than the one upon which he was sentenced). In his supplemental brief, defendant cites Patton v. State of North Carolina, D.C., 256 F. Supp. 225, quoting the fourth paragraph of the syllabus as follows:

"It is not a crime for one to insist upon his constitutional rights, and no person may constitutionally be punished for doing so."

The Attorney General contends in his brief that insofar as the Court made the finding that defendant's 1947 guilty plea was involuntarily entered it was a nullity; and upon being granted a new trial, at defendant's own motion [which resulted from his Federal Court action], at the time of his second trial he was in exactly the same position he was in at his 1947 trial; therefore, defendant is not entitled to the relief being sought. The Attorney General, like the defendant, cites Watson v. State, supra; and also Duncan v. State (1928), 41 Okl.Cr. 89, 270 P. 335; and still others which follow the holding in the Watson case.

Under ordinary circumstances we would be bound to agree with the Attorney General's position. However, under the circumstances of this particular case the situation is different from the ordinary one, and we are unable to accept the Attorney General's position in its entirety. This case was remanded by the United States Court of Appeals for specific findings of fact. The United States District Court made the finding of fact, in accordance therewith, *that defendant's plea was not voluntarily entered.* Being bound by that finding of fact, we must therefore presume that if defendant had known the conditions —which induced his plea—could not be fulfilled, he would not have entered such plea. In addition, we observe in Ward v. State, 90 Okl.Cr. 120, 123, 210 P.2d 790, 791, when the trial judge asked the prosecutor, with reference to defendant's plea of guilty: "The plea of guilty, of course, entered to manslaughter in the first degree?"; the prosecutor replied, "Yes, Sir, *we also recommend that the charge be reduced to manslaughter in the first degree."*

We consider the prosecutor's recommendation, made after the jury had been dismissed, and which was accepted by the trial judge, to constitute the State's election concerning the charge for which defendant was being prosecuted. Therefore, under these circumstances, the State must remain bound by that election. And as a consequence of that voluntary election —on the part of the prosecutor—the State is estopped from placing this defendant on trial to face a charge of murder at his subsequent trial.

In reaching this decision, we are not holding contrary to the earlier decisions of this Court, i. e. "when one obtains a reversal on appeal from a jury conviction for a lesser offense than the one charged in the information, or indictment, that such operates as an acquittal of the greater offense charged". Instead, we are merely holding by this decision that under the facts of this case the State is estopped from enforcing, against this defendant, a charge of murder at his second trial. We reach this holding for two reasons.

First, because defendant's plea of guilty to the charge of the lesser offense of first degree manslaughter was involuntarily given [as set forth in the United States District Court findings] insofar as it was improperly induced by the officers of the court upon false information—whether knowingly or not—; and, secondly, after the prosecuting attorney announced his recommendation to the trial court—to reduce the charge from murder to first degree manslaughter—and the trial court accepted such recommendation, the State thereafter became estopped from later prosecuting defendant on the greater offense.

Therefore, be it understood, we will consider each appeal on its own merits, and when it is apparent that the State is bound by an election of the lesser offense, as in this case, we will judge the matter accordingly.

Having reached the decision concerning the charge with which defendant should have faced at his second trial, we shall proceed to consider the relief being sought by this appeal.

As stated earlier, defendant prays for reversal of his conviction, or, in the alternative, that this Court should remand this case to the trial court for retrial on the charge of manslaughter in the first degree.

When the trial court instructed the jury, the instructions properly included the defense offered by defendant, i. e. self-defense; and it also instructed on all the elements of manslaughter which were considered by the jury in reaching its verdict. Such being the fact, we can see little to be gained by remanding this case to the trial court for yet another trial, on the same testimony and evidence already heard.

There is no question concerning the defendant's having received due process of law, especially at his second trial. He was provided the case-made of the first trial at State expense; he was provided competent defense counsel, at State expense; he was provided the opportunity to confront the witnesses against him, except those *actually unavailable* to testify, whose transcript of testimony at the first trial was read; he was also provided an opportunity to testify in his own behalf, which he did. Likewise, defendant was properly advised of all his constitutional rights by his court-appointed counsel, as well as by the trial court.

The jury was properly instructed as to the law pertaining to both the murder charge, and to manslaughter in the first degree; and the jury considered and weighed all the testimony and evidence, after which it returned a guilty verdict to the charge of murder. Having considered all the evidence contained in the record before the Court, there is no reason to believe that another jury will return any different verdict, even considering the matters raised in defendant's motion for new trial. We must, therefore, conclude that the defendant has received due process of law.

"Requirements of due process of law is met if criminal trial is had according to

settled course of judicial proceedings. U.S.C.A.Const. Amend. 14." In re Pate, Okl.Cr., 371 P.2d 500.

This Court, under the power to modify judgments (22 O.S.A. § 1066) may reduce the judgment to the included offense of manslaughter first degree, and modify the sentence accordingly. Stokes v. State, 86 Okl.Cr. 21, 46, 189 P.2d 424, 436. See also Jones v. State, 94 Okl.Cr. 359, 236 P.2d 102; and Stewart v. State, Okl.Cr., 435 P.2d 191 (1967).

We are, therefore, of the opinion that justice will be best served by modifying the judgment herein from murder to manslaughter first degree, and modifying the sentence from life imprisonment to forty years confinement in the State Penitentiary.

It is further ordered that defendant Arley Ward shall be entitled to receive credits already earned toward the fulfillment of the judgment and sentence imposed on his first trial in 1947 by the Tulsa County District Court, such credits to be allowed toward the fulfillment of the judgment and sentence as herein modified.

The judgment and sentence of the District Court of Tulsa County, Oklahoma, as so modified, is affirmed.

NIX, P. J., concurs.

BUSSEY, Judge (specially concurring): I am in accord with my colleagues that the judgment and sentence appealed from should be affirmed, but I would affirm without modification for the reason that I believe that when the original judgment and sentence was vacated, the defendant was placed in the identical position which he occupied prior to his previous trial and the entry of his plea.