Terry **WHALEY**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–15698.

Court of Criminal Appeals of Oklahoma.

March 24, 1971.

Melvin R. Singleterry, Marlow, for plaintiff in error.

G. T. Blankenship, Atty. Gen., William M. Bonnell, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Terry Whaley, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Stephens County of the offense of Robbery By Force, his punishment was fixed at eight (8) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial revealed that at approximately midnight on December 11, 1967, the sheriff's office received a report concerning an alleged beating and robbery. Floyd Payne, the undersheriff, testified that he and sheriff Thomas answered the call and found Clarence Hill in a beaten condition. Hill took the officers to the site of the robbery and they observed tire tracks and evidence of a scuffle. They transported Hill to the Blue Lounge No. 1 in Duncan where Hill identified the defendant and John Gaskill as the ones who had beaten and robbed him. They were advised that they were under arrest when Gaskill knocked the sheriff down and beat his head on the floor. A struggle resulted and Gaskill ran from the scene. The defendant was transported to the county jail by a police officer and escaped. He was later apprehended and a blood donor card which was burned on the edges was found in his possession. After receiving information from a Fred Husband he drove to a location and found a payroll stub with the name C. A. Hill and the defendant's selective service card. These exhibits had burned edges similar to the defendant's blood donor card.

Sheriff Thomas testified substantially to the same facts as witness Payne.

Fred Husband testified that he found a billfold belonging to Clarence Hill, a cigarette lighter and a ball point pen near his pasture and gave the items to undersheriff Payne.

Mrs. Fern Swindler testified that she worked at the Blue Lounge No. 2 on the night in question. She observed Clarence Hill, Gaskill and the defendant drinking together. Hill poured beer on the defendant's sister-in-law and was struck by the defendant and Gaskill. She was unsure of the time that Hill and Gaskill left the club but that she danced with the defendant several times after they left. He left the club before they closed. She closed the club at about 12:30, took a barmaid home and went to the Blue Lounge No. 1 and observed the defendant and Gaskill sitting in a booth.

William Reed testified that he was in the Blue Lounge No. 2 and observed Hill who had quite a bit of money. He did not observe any fights. He heard the defendant tell Hill to put his money in his pocket or that somebody would roll him and that that somebody was the defendant. He observed Hill, Gaskill and, he believed, the defendant leave together.

Mr. and Mrs. Pat Nunley testified that Hill came to their house about 12:15 asking for help and requested that the police be called. Hill's face was bloody and his shirt was torn.

Raymond Duckworth, the co-owner of the two lounges, testified that the defendant and Gaskill arrived at Lounge No. 1 about the same time. The sheriff arrived shortly thereafter and a fight occurred. Officer Dean testified that he transported the defendant to the courthouse and that the defendant jumped from the police car

and fled. He found the defendant behind a bush at approximately 2:45 A.M.

Clarence Hill testified that he had known the defendant and Gaskill for several years. He went to the Blue Lounge No. 1 and had several drinks with the two subjects. He denied seeing or pouring beer on Ann Whaley, or that he was struck inside the club. He left the club about 11:00 P.M. with Gaskill to go to another bar. Gaskill drove toward the country and stopped the car. Another car stopped behind them and the defendant and an unknown person dismounted. The defendant, Gaskill and the third person beat and kicked Hill and took his billfold which contained approximately eighty dollars. He was warned that if he reported it they would kill him. He identified the exhibits as his property and testified that the cards and pictures had not previously been burned on the edges. He admitted a prior conviction for strong arm robbery in 1954.

The defendant called William Gillespie as his first witness. He testified that he was the jailor the night the defendant was arrested. He did not remember how much money the defendant had when he was booked into jail.

Ann Whaley, the defendant's sister-in-law, testified that she was at the Blue Lounge No. 1 until it closed at about 12:30. Hill poured beer on her and was struck by the defendant. Hill, Gaskill, the defendant and two soldiers had their billfolds out and were showing pictures. She testified that Hill left, then Gaskill and that the defendant did not leave for an hour after they left. Bill Reed, the state's witness was present at the lounge earlier but left before Hill arrived.

James Smith, a soldier, testified that he was in the lounge all evening. He was drinking with the parties who were showing pictures. He did not see Hill pour beer on Ann Whaley but did see Hill struck. Hill left the club and about thirty (30) minutes later Gaskill and the defendant left. He left about fifteen (15) minutes later and after taking a girl home he observed the defendant and Gaskill together in the other lounge.

Thomas Glasgow, another soldier, testified substantially as the witness Smith with the exception that he thought Gaskill left with Hill and as to the actual times the parties left the club.

Evalina Byrd, the defendant's mother, testified that she picked the defendant's personal effects up at the jail and that he had very little money.

The defendant testified that he was in the lounge drinking with the various people. That Hill spilled beer on Ann Whaley and he struck Hill. He testified that everyone had their billfolds out showing pictures. Hill left and Gaskill left shortly thereafter. He did not leave until about an hour later. He attempted to buy a bottle, got sick and arrived at Lounge No. 1 within twenty minutes. He was not with Gaskill and did not rob Hill. He admitted he was pretty drunk, that he ran from the police car and that the selective service card found by undersheriff Payne was his. The last time he had observed the card was in his billfold and it had not been burned. He further admitted two prior felony convictions and that he had been released from the penitentiary about eighty (80) days prior to the date of the offense.

The defendant's first proposition contends that the verdict is not supported by the evidence. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant is guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh evidence and determine the facts. Gray v. State, Okl. Cr., 467 P.2d 518. We, therefore, find this proposition to be without merit.

The second proposition alleges that the trial court erred in denying defendant's motion for new trial and arrest of judgment on the basis of newly discovered evi-

dence. The basis of the newly discovered evidence was the following affidavit given by the defendant's brother, to-wit:

"STATE OF OKLAHOMA,

ss

COUNTY OF STEPHENS,

### AFFIDAVIT OF JERRY DANIEL FINLEY

Jerry Daniel Finley, being first sworn says: That William Reed who testified for the State in Case of State of Oklahoma vs Terry Whaley, told him as follows:

That he William Reed had been convicted of a felony in the State of New York and had served time in the State Pen.

That he was a Half Brother to Dale Held, who was convicted of a Felony and is now in Granite, Oklahoma Serving his sentence.

That he wrote a Letter to his half brother in Granite Oklahoma in Regard to Case of State of Oklahoma vs Terry Whaley, that the letter was conficated by the Authorities of Granite Oklahoma and sent to the Sheriffs Office of Stephens County, Oklahoma, after which they Contacted him.

That William Reed Testified in this Case, and the Jury during their 7½ hrs of deliberation, called for and his testimony was read to the Jury, shortly after which the Verdict was rendered in the Case of State of Oklahoma vs Terry Whaley No 3933, District Court of Stephens County.

Further Affiant Saith Not.

/s/ JERRY DANIEL FINLEY
/t/ Jerry Daniel Finley

Subscribed and sworn to before me this 9th day of March 1968

(SEAL) /s/ DOROTHY L. MOSER
Notary Public

My Commission Expires: 3–22–70"

We are of the opinion that the trial court did not abuse its discretion in overruling the motion for new trial. In Ward v. State, Okl.Cr., 444 P.2d 255, we stated in the third and fourth syllabi:

"3. A motion for new trial upon the ground of newly discovered evidence is not sufficient where it only tends to discredit or impeach the witness for the State and especially where it would not change the result of the trial.

"4. The granting of a new trial on the ground of newly discovered testimony is a matter largely within the trial court's discretion and is not to be exercised except where there is reasonable probability that, if such evidence had been introduced, different results would have been reached."

We further note that the witness Reed was never specifically asked at the trial if he had been convicted of a felony or whether his brother was in the penitentiary. We are of the opinion that the material contained in the Affidavit could be used for the purpose of discrediting or impeaching the witness Reed and if admitted would not change the result of the trial in that one, the defendant's witnesses had testified that Reed was not even present when Hill and the defendant were in the club. We, therefore, find the proposition to be without merit.

The defendant's final proposition asserts that the punishment was excessive. We need only observe that the punishment imposed was well within the range provided by law and does not shock the conscience of this Court.

The record is free of any error which would justify modification or reversal and we are, therefore, of the opinion that the judgment and sentence should be and the same is hereby affirmed.

NIX and BRETT, JJ., concur.