Everett Lee MAXEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–224.

Court of Criminal Appeals of Oklahoma.

Sept. 4, 1974.

John C. Muntz, Hugo, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. McCurdy, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Everett Lee Maxey, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Choctaw County, Case No. CRF–73–5, for the crime of Rape in the First Degree; his punishment was assessed at thirty (30) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At trial, Mertie Brisbois testified that she was a divorcee with four children living in her home with her in Hugo, Oklahoma. She stated that Charlotte June Liles, the eldest child living with her, was retarded. She further testified that on the 12th day of January, 1973, she had remained home all day with Charlotte, and that the defendant returned home that afternoon after work. Ms. Brisbois further testified that she left the home that evening at 7:30, and when she returned at 11:30, she checked the children to see that they were safe and then went to bed.

This witness further testified that as she was doing the housework on the morning of the 13th of January, 1973, she noticed that the defendant's sheets were soiled with what appeared to be blood. She then approached her daughter, Charlotte, and asked whether or not the child had been in the defendant's room. She indicated that she received a negative response to her question. She stated that at that time she called the sheriff, who came to her home and at that time she gave him the sheet and she took Charlotte to the hospital.

Paul William Liles testified that although he was 13 years old at the date of the trial, he had been 12 years old when the incident under investigation had occurred. He stated that on the 12th day of January, 1973, his mother, his three brothers and sisters, and he, along with the defendant and the defendant's son, had been present at his mother's home. He stated that his mother left that home around 8:30 that evening and that after she left, the defendant cleaned the kitchen and when he went to bed at 9:00, the defendant was trying to get the baby to go to sleep. He further testified that only the defendant, Charlotte, and the baby remained up when he went to bed.

Charlotte June Liles testified that she was 14 years old at the time the alleged rape occurred. She further identified the defendant as the party that had been living at her home at the time of the incident. In response to questioning by Vester Songer, the Assistant District Attorney from Hugo, Oklahoma, Charlotte testified as follows:

"Q. Now, did anything happen there before your mother got back, Charlotte? Did anything happen to you?

A. Yes. [Tr. 154]

* * * * * *

Q. Charlotte, I believe you told me that something happened in the room where Maxey was sleeping on the bed. Would you tell me what happened? Charlotte, I am waiting and we are all waiting for you to tell us what happened? Will you tell us what happened? Would you please tell us what happened, Charlotte?

A. He got on top of me.

Q. Who did?

A. Maxey.

Q. And then what happened? . . .

A. He got on top of me.

Q. Then what did he do? . . .

A. He went up and down on me.

Q. Had he ever done that before?

A. Yes.

Q. When was that?

\* \* \* \* \* \*

A. When Marty was in the hospital.

Q. Is that your little brother, Marty?

A. Yes.

\* \* \* \* \* \*

Q. Did he do it anymore from that time until this time you went to the hospital?

A. When Marty was in the hospital.

Q. No. Did he do that anymore to you from the first time until this time that you went out to the hospital? Did he do it more than twice?

A. A lot of times." [Tr. 155–157]

On cross-examination, Charlotte testified that she had been coached in her testimony by her mother.

Casey Moser testified that he was the Undersheriff of Choctaw County and was so employed on January 12, 1973. He stated that on the 13th day of January, 1973, he received a complaint calling him to 607 West Oklahoma in Hugo, which was the residence of Mertie Brisbois. He stated that once he arrived at the residence he was taken to the bedroom where he observed a spot of what looked like blood on the sheet on the bed in that room. He identified State's Exhibit 1 as a photograph of the sheet and bed and said Exhibit was admitted at that time into evidence. He further identified State's Exhibit 2 as the sheet in the photograph and said Exhibit was also admitted at that time. He testified that no analysis was made of the spot on the sheet. He further stated that he arrested the defendant on that date.

Dr. A. L. Fountain testified that he was a Doctor of Osteopathy and Surgery. He indicated that on the 13th day of January, 1973, he saw the prosecutrix in the emergency room in the hospital at Hugo, at 9:40 a. m. and that he conducted a pelvic exam of the vaginal tract. He indicated he observed no bruises or tears and there

was no evidence of bleeding from trauma. He further stated that he obtained viable male sperm from the vaginal canal, and it was his opinion that the prosecutrix had recently experienced sexual intercourse. He further stated that it was his opinion that the prosecutrix would not have bled at the time of the recent intercourse.

Darrell Brownrigg testified that he had been employed by the City of Hugo, in the police department, on the 12th day of January, 1973, and on that date, Mr. Brisbois came to the police station and asked the police to go see who was with his children. Brownrigg testified that at approximately 9:00 o'clock that evening, he went to the Brisbois' home and that the defendant answered his knock. He further stated that it was his opinion that the defendant had not been drinking.

■ Defendant asserts, as his first proposition of error, that the trial court erred in denying defendant's Motion to Dismiss. Defendant asserts that he was not arraigned within 30 days as required by 22 O.S.1971, § 470, which provides:

"The arraignment of the defendant shall be held within thirty (30) days after the defendant is ordered held for trial upon a preliminary information charging the commission of a felony; provided, for good cause, the court may set a later date."

Defendant claims that there was no action taken from the time he was returned to Choctaw County Jail from Eastern State Hospital on June 6, 1973, until his arraignment on August 14, 1973.

A review of the record in the instant case indicates that in the period in which defendant asserts he should have been arraigned, he was represented by two different appointed counsel, and was apparently unable to cooperate with either, as is evidenced by defendant's letters to District Judge Neal Merriott and Attorney Lon Kile, asking that Kile be discharged from the case. The record further discloses that arraignments were set within the provisions of 22 O.S.1971, § 470, but were reset

on two occasions due to requests from defendant for additional time in which to plead and also reset once due to a request by the defendant for a mental observation.

Statutes that have placed a time requirement on the conducting of an arraignment have as their basis, the protection of the defendant. In the instant case, the record reveals that it was the defendant that precipitated the delay complained of, and as such, we see no State action merits action by this Court. We, therefore, find this proposition to be without merit.

■ Defendant asserts, as his second proposition of error, that the trial court erred in refusing to sustain defendant's Motion for Continuance during the trial, and defendant's Motion for New Trial, both based on what defendant asserts was newly discovered evidence. The evidence which is the subject of the Motions is that the defendant asserts, if given time, he could obtain a gynecologist who would testify that the vaginal vault is highly acidic and sperm would not remain viable for more than two hours. This testimony would be opposed to the testimony of Dr. A. L. Fountain, D. O., and in Ward v. State, Okl.Cr., 444 P.2d 255 (1968), this Court stated in the third paragraph of the Syllabus:

"A motion for new trial upon the ground of newly discovered evidence is not sufficient where it only tends to discredit or impeach the witness for the State and especially where it would not change the result of the trial."

The evidence asserted as basis for the Motion for Continuance and New Trial falls within the rule in Ward v. State, supra.

Furthermore, the record indicates that Dr. Fountain was endorsed on the Information dated January 15, 1973, as a witness, and Dr. Fountain also testified at the preliminary hearing. This afforded the defendant sufficient opportunity to acquaint himself with the testimony that would be offered by Dr. Fountain and to have sought a witness, or witnesses in his own behalf, prior to the commencement of the trial. In Colvard v. State, Okl.Cr., 453 P.2d 715 (1969), this Court stated in paragraph 2 of the Syllabus:

"The rule is well settled that it is the duty of defendant to use all reasonable diligence in order to secure the attendance of witnesses in his behalf, and it must be made to appear from the application of continuance that he has used due diligence in procuring the attendance of his witnesses, and the application must set out facts fully which constitute due diligence."

We are of the opinion that the defendant has failed to show due diligence in procuring the attendance of the witness.

Also, in Swarb v. State, Okl.Cr., 358 P. 2d 850 (1961), this Court stated:

"* * * This court has repeatedly held that a motion for new trial on grounds of newly discovered evidence is addressed to the trial court's sound discretion, and his ruling on the motion will not be disturbed unless there is a manifest abuse of discretion. . . ."

We find no manifest abuse of discretion in the court's ruling in this instance.

For the aforementioned reasons, we find defendant's assertion to be without merit

Defendant asserts that two irregularities occurred during trial proceedings that prevented him from having a fair and impartial trial, as his third proposition of error.

■ First defendant asserts that he was prevented from having an impartial jury due to a statement by a prospective juror during voir dire. This assertion is reflected in the following:

"BY THE COURT: Have any of you heard anything about the case?

BY A JUROR: I have.

BY THE COURT: You have, ma'am?

BY THE JUROR: Yes, sir.

"BY THE COURT: Is this information you received from someone to [sic] purported to know what the facts were in the case?

BY THE JUROR: I saw the medical record. I worked in the record department at the hospital.

BY THE COURT: I think I will excuse you at this time. Call another juror."

Defendant asserts that the preceding prevented him from obtaining a fair and impartial trial. With this contention this Court cannot agree. The juror's statement does not indicate to her fellow jurors what was contained within the record, nor does it tend to prejudice the defendant. It is this Court's opinion that the trial court properly exercised his discretion in dismissing the prospective juror at the time of her statement, thereby preventing any false impressions that would be detrimental to the defendant.

 Secondly, the defendant asserts that it was error for the trial court to consider the pre-sentence investigation which reflected a former conviction in setting punishment, when the jury was unable to do so. Defendant erroneously argues that the rendering of punishment by the trial court should be analogous to the imposition of punishment by the jury. This is not true. In this situation, 22 O.S.1971, § 973, is applicable, and states:

"After a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct."

See also, Kittrell v. State, 96 Okl.Cr. 301, 253 P.2d 853 (1953). The punishment imposed in the instant case will be subject to scrutiny and modification by this Court only if it can be said that said sentence shocks the conscience of this Court. The sentence imposed in this matter does not shock the conscience of this Court.

In both of these assertions, defendant cites no authority in these arguments. This Court has repeatedly held, as in Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969), that:

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred."

For the above reasons, we find the defendant's assertions of error to be without merit.

 Defendant asserts, as his fourth proposition of error, that there was insufficient evidence to justify the sentence imposed by the court. The record reflects that the defendant was living in the same household as the prosecutrix; that the defendant was babysitting with the children on the night in question; and that medical testimony established that there were viable sperm in the vaginal canal of the prosecutrix.

In Saylor v. State, Okl.Cr., 506 P.2d 589 (1973), this Court quoted Haga v. State, Okl.Cr., 422 P.2d 221 (1969), stating:

" 'This Court has repeatedly held that a conviction for rape may be had on the uncorroborated testimony of prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. * * *

However, this rule has been limited to the effect that we will carefully examine the record in cases of this character, which we have done in this case, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory.' "

In looking to the record in the instant case in its entirety, it is evident that all the evidence was weighed and considered by

the jury under proper instructions given by the trial court. It is also evident that the jury resolved the issues against the defendant and necessarily, the jury resolved the testimony of the prosecutrix was not inherently improbable or unworthy of credence, but to the contrary, that it was clear and convincing. Under long established precedent, this Court has no reason to overturn the action of the jury. We, therefore, find no merit to defendant's assignment of error.

Therefore, it is the decision of this Court that the judgment and sentence appealed from be affirmed.

BLISS, P. J., concurs.