Gary D. SAYLOR, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-16582.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1973.

Lewis F. Oerke, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., Mike Jackson, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge.

Appellant, Gary D. Saylor, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Comanche County for the crime of Rape in the First Degree, and his punishment assessed by the jury at ten (10) years imprisonment. From the judgment and sentence based thereon, a timely appeal has been perfected to this Court.

In substance, the Information charges the offense was accomplished "with the use of force and violence and by means of threats of immediate and great bodily harm to one Sue Thomas," overcoming all resistance on her part.

The prosecutrix testified in chief that on June 26, 1970, the date of the alleged crime, she and her husband, a solider at Ft. Sill, resided at 2014 "C" Avenue in Lawton and had for some time prior thereto. That she was an active member of her church, taught a Bible class, and sang in the choir, and that she had a bachelor's degree in education and psychology from Emily and Henry College. That on said date at the approximate hour of 4:00 a. m., as had been her custom for some time, she drove her husband to the post and then returned to their home on "C" Avenue.

Upon reentering her home she was attacked by a man wearing a black mask and holding a butcher knife; as she screamed, the man, later identified as defendant after removing his mask, told her not to scream, and that he would kill her and also her husband.

Mrs. Thomas further testified defendant said he had observed her home and their going and coming for some time and that he then told her "I want you, and I want you to come back to the bedroom with me." She, out of fear, complied as the defendant held the knife against her body. In the bedroom the defendant forced her to perform and submit to two separate and distinct acts of perversion and then to submit to sexual intercourse vaginally, and later a second such act of intercourse. After a lapse of 30 or 45 minutes, she explained to the defendant that friends of hers were expected for breakfast and he had better leave. He left, but reluctantly, and only after prosecutrix agreed to meet

him again the following Monday. Prosecutrix stated she feared for her life and feigned willingness to meet him as he suggested. She then locked the door and called her husband who suggested she go next door to tell the neighbors that she would not be able to fix breakfast for them, which she did, and she began crying and became visibly shaken, and the neighbor suggested and drove her to get her husband at the post. She and her husband went to the police department, reported the incident and went back to Ft. Sill, where Mrs. Thomas had a physical examination.

The prosecutrix further testified that arrangements had been made for a police officer, Detective Connally, to wait inside her home the following Monday while she was away to take her husband to the base; Detective Connally gave the prearranged signal and the defendant appeared, as he had said he would, and was taken into custody and was being held when Mrs. Thomas returned. She positively identified the defendant. On cross-examination she denied she had ever seen him before the date of the alleged crime, Friday, June 26, 1970.

The attending physician, Dr. Jerome Eder, testified he examined Mrs. Thomas, as she had testified, and several smears from the vagina revealed the presence of sperm and further examination disclosed two small tears at the entrance to the rectum.

Detective Connally corroborated Mrs. Thomas as to his waiting in her home the early morning hours of June 29, and arresting the defendant, who appeared upon the giving of the prearranged signal with the porch light. Connally informed defendant of his rights, and defendant voluntarily admitted knowing Sue Thomas, denied he had raped her, but stated his acts of sexual intercourse with her were with her complete consent.

Defendant testified in his own defense. That he was in the Army, stationed at Ft. Sill, married, and lived with his wife and four children at 1402 Williams Street in Lawton. That on Saturday, June 20, 1970,

after he and his wife had an argument, he was driving past the Thomas home on "C" Avenue and saw Mrs. Thomas for the first time and she smiled and waved to him; he stopped, talked to her, and ultimately made a date with her for the following Monday in the early morning hours. That the date was kept, as well as one the following Wednesday and Friday, June 26, the date alleged in the Information. The defendant testified further that on each occasion prosecutrix was agreeable to acts of intercourse and that he did not rape her, as charged in the Information, nor did he ever threaten her with a butcher knife as testified by Mrs. Thomas. He admitted the arrest by and conversation with Detective Connally in which he stated he had the acts of sexual intercourse with prosecutrix on the date alleged in the Information, but with her complete consent and that he did not use any force, violence, threats, or bodily harm. Neither in direct examination or cross-examination was he asked, nor did he deny of his own accord, the depraved acts charged against him by Sue Thomas by her testimony in chief.

To rebut the defendant's testimony that he first met Mrs. Thomas on Saturday, June 20, before the date of the alleged crime, the State called Captain Donald Scarbrough as a witness, who testified that on the Saturday in question he had placed defendant under certain restrictions at 8:00 a. m. until 3:30 p. m. on the Army post and the defendant had an NCO with him at all times during those hours. Another person, State's rebuttal witness Eugene Sasranski, Criminal Investigator with the Criminal Investigation Division at Ft. Sill, testified he had taken defendant into custody at 1:10 a. m., June 20, 1970, while on guard duty with the motor pool compound and released him to a warrant officer at 7:00 a. m., per order from Captain Scarbrough. There was no objection to this testimony. To the contrary, the record indicates that the defendant was willing to stipulate that Sasranski would so testify, rather than await the appearance of the witness.

Defendant then testified he broke restrictions Saturday morning and went to his home in Lawton to get some clothes and returned to the base later in the day, during which time he and his wife had the argument and, presumably, it was during this same period of time that defendant drove past the home of prosecutrix on "C" Avenue, talked with her, and arranged the subsequent meeting which he contended had taken place.

Both the State and the defendant then rested. A short time later, defendant moved to reopen the case, saying he had rested prematurely, and the court permitted the case to be reopened.

A stipulation was then entered into and submitted to the jury to the effect that the undergarment contended by the State to have been used by the defendant, as a mask when prosecutrix first saw him upon returning to her home the date of the crime, had been examined by the State Crime Laboratory and no hair was found on the undergarment.

Further, the defendant was permitted to make a record that he had entered his objection to the testimony of State's witness, Eugene Sasranski, which objection was overruled.

Additional record was made concerning testimony of Sue Thomas as to a letter written by defendant's attorney to her before the trial; however, this aspect of the trial is not embodied in either of the three propositions asserting alleged errors now before this Court. We observe, however, testimony concerning the letter was competent in light of the cross-examination of prosecutrix.

The defendant in his appeal urges various particulars of error, and he has consolidated them into three (3) propositions. They are as follows:

"1. That the argument of the State's counsel to the jury in his closing argument wherein he stated, 'Do you think the Army wants him back? They don't want him back.' (C–M. 142) which statement was objected to by counsel for the defendant, but the State's attorney was permitted to proceed without any admonition by the court to the jury to disregard the statements, and he made the following statement 'they don't want him.' (C–M. 142) All of which statements were highly prejudicial to the cause of the defendant as set forth in the Complaint and Information under which he was being tried. (C–M. 142)

"2. Error of the court, to which the defendant excepted, in permitting a rebuttal witness by the State whose testimony was objected to, (C–M. 139) wherein an Army investigator, commonly referred to as a C.I.D. agent, was permitted to testify to or infer strongly that the defendant in this case was at the time of the alleged crime, or at least shortly prior thereto, being investigated for some crime, other than that which the defendant was charged with in the trial of this case. (C–M. 132, 133, 134 and 135)

"3. That the verdict of the jury was not sustained by sufficient evidence to cause it to make a finding of First Degree Rape; this being particularly true in view of the court's instructions, which the jury apparently completely disregarded, which instructions explained to said jury what constituted First Degree Rape and what constituted resistance on the part of a complaining witness in an alleged rape case."

### PROPOSITIONS I AND II

Propositions one and two will be considered together, but in reverse order.

The defendant had testified that the testimony of the prosecutrix was false for the reason that they had first met on Saturday, June 20, before the date of the alleged crime in the Information, Friday, June 26. To rebut this testimony the State

called its rebuttal witnesses, Captain Donald Scarbrough and Eugene Sasranski, to establish that at the very time defendant contended he had met the prosecutrix on Saturday that he was, in fact, restricted and confined to a certain area at the Army post, and, therefore, he could not have met the prosecutrix in the front of her home on "C" Avenue in Lawton. The testimony of these two witnesses was competent and relevant rebuttal testimony and was not injected into the trial by the State to show that the defendant as a soldier had been involved in some crime or disobedience of orders at the Army post.

It is well established and this Court has held in Wafers v. State, Okl.Cr., 444 P.2d 825 (1968) as follows:

"* * * it is a well established rule that rebuttal evidence may be admitted to explain, repel, counteract or disprove the evidence introduced by defendant."

■ As indicated above, in proposition one, defendant complains of certain alleged prejudicial statements by the District Attorney in his closing argument. The asserted improper remarks of the District Attorney arose, no doubt, by reason of the District Attorney's referring to certain portions of the two Army witnesses' testimony, though defense counsel objected to the remarks of the District Attorney, but law is well established, where counsel for defendant believes the prosecution has made an improper statement, a timely objection should be made, as it was, together with a request that the jury be instructed to disregard the improper statement. In Byrnes v. State, Okl.Cr., 451 P. 2d 19 (1969), this Court cited Harvell v. State, Okl.Cr., 395 P.2d 331 (1969), as follows:

" 'Counsel for a defendant must not only object to improper statements of the county attorney in his argument to the jury, but he must go further and move the court to exclude such remarks from the jury and instruct them not to consider them for any purpose, unless the remarks were of such a character that the

error would not be cured by a withdrawal of the remarks.' ".

We are of the opinion that the remarks resulted in no prejudice to the defendant, and certainly under the rule stated, such remarks do not constitute reversible error.

## PROPOSITION III

■ In proposition three, the defendant contends that the conviction should be reversed because the testimony of the prosecutrix was not corroborated in any manner whatsoever.

In Haga v. State, Okl.Cr., 422 P.2d 221 (1969), the Court said:

"This Court has repeatedly held that a conviction for rape may be had on the uncorroborated testimony of prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. * * *

"However, this rule has been limited to the effect that we will carefully examine the record in cases of this character, which we have done in this case, to see that the evidence of the prosecutrix is clear and convincing, and is not inconsistent, incredible or contradictory."

First, the prosecutrix was sufficiently corroborated by the examining physician, who was called as a State's witness. Next, all of the evidence was weighed and considered by the jury under the proper and applicable instructions given by the court, and the jury resolved the issues against the defendant and they, of necessity, resolved that the testimony of prosecutrix was not inherently improbable or unworthy of credence, but that it was clear and convincing and not inconsistent, incredible or contradictory, and we, under long established precedent have no reason to overturn the action of the jury.

■ We find no merit in the three propositions of alleged error advanced by the defendant. Further, it is beyond us to comprehend the final assertion in defendant's brief in which it is stated that this

case should be remanded to the trial court, and upon retrial, be submitted to the jury for a lesser and included crime of Assault with Intent to Rape. Two authorities, Blanton v. State, Okl.Cr., 357 P.2d 243 (1960) and Kilpatrick v. State, 75 Okl.Cr. 28, 128 P.2d 246 (1942) were cited to substantiate this new theory. In each of the two cases cited, the defendant testified he did not have an act of sexual intercourse with the prosecutrix. In the case before us, both the defendant, Gary D. Saylor, and the prosecutrix, Sue Thomas, testified that a complete act of sexual intercourse was accomplished. The defense was consent, not denial of the act. There is not the slightest logic for the theory advanced by the defendant.

The case is affirmed.

BUSSEY and BRETT, JJ., concur.